UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-cv-60591-MD/Valle

| | |
|---|---|
| CONSWALLO TURNER, TIESHA FOREMAN, ANGELINA WELLS, VERONICA KING, NAVAQUOTE, LLC and WINN INSURANCE AGENCY, LLC, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br> v.<br><br>ENHANCE HEALTH, LLC, TRUECOVERAGE, LLC, SPERIDIAN TECHNOLOGIES, LLC, BENEFITALIGN, LLC, NUMBER ONE PROSPECTING, LLC d/b/a MINERVA MARKETING, BAIN CAPITAL INSURANCE FUND L.P., DIGITAL MEDIA SOLUTIONS LLC, NET HEALTH AFFILIATES, INC., MATTHEW B. HERMAN, BRANDON BOWSKY, GIRISH PANICKER, and MATTHEW GOLDFUSS,<br><br>          Defendants.<br>_____/ | CLASS ACTION<br>(Jury Trial Demanded) |

**DEFENDANTS NUMBER ONE PROSPECTING, LLC AND BRANDON BOWSKY'S MOTION TO QUASH PLAINTIFFS' SUBPOENA ON NON-PARTY MONICA REED OR, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER**

Defendants Number One Prospecting, LLC d/b/a Minerva Marketing ("Minerva") and Brandon Bowsky ("Bowsky") (collectively, "Minerva Defendants") move under Federal Rules of Civil Procedure 45(d)(3)(A)(iii) and (iv) and 26(c)(1) to quash Plaintiffs' subpoena duces tecum on non-party Monica Reed ("Reed Subpoena") and, alternatively, for a protective order requiring that Plaintiffs destroy the production of documents by Monica Reed that belong to the Minerva Defendants, and that are outside the scope of discovery.

#2938925v2-998944.0007

**Brief Facts**

Bowsky is the principal and owner of Minerva, a lead-generating business that develops and aggregates leads from other advertisers. Minerva generates leads in multiple industries, one of which is the insurance industry. Six Plaintiffs filed this lawsuit against twelve Defendants alleging fifty-five counts in a shotgun Amended Complaint [D.E. 63] spanning 185 pages. The Amended Complaint alleges various RICO Act violations, aiding and abetting fraud, aiding and abetting breach of fiduciary duty, and negligence. In a nutshell, Plaintiffs allege that Defendants are part of a RICO enterprise that purportedly engaged improper enrollment or switching of consumers in healthcare insurance plans under the Affordable Care Act ("ACA"). With respect to the Minerva Defendants specifically, Plaintiffs allege that the leads Minerva sold to the co-defendant insurance agencies were generated from deceptive ads purportedly offering cash cards to consumers. *See, e.g.*, Am. Compl. ¶¶ 8–14 (D.E. 63). None of this is true, but that's an issue for another day.

On August 27, 2024, Plaintiffs served their Notice of Intent to Serve the Reed Subpoena, attached as **Exhibit A**. The Reed Subpoena seeks the production of documents from non-party Monica Reed—a former bookkeeper of Minerva—in her individual capacity. The Reed Subpoena seeks overbroad categories of business records that are disproportionate to the needs of this case in that it seeks extensive financial and business records of Minerva, QuickBooks files, and corporate records of Minerva along with non-party Medigap, LLC. Moreover, rather than seeking records belonging to Reed individually, the Reed Subpoena seeks records that belong to Minerva, not Ms. Reed.

Attached to this Motion is **Exhibit B**, Mr. Bowsky's Declaration, setting forth that Ms. Reed was a former bookkeeper for Minerva, and that she no longer works with Minerva. Ex. B ¶ 4. Any copies of documents that Ms. Reed retained copies of would have been in connection with

her work as a bookkeeper for Minerva. She is not an officer, director, or member of Minerva, she has no control over the company, and has no legal right to produce Minerva's records. Such records belong to Minerva and are accordingly in the possession, custody and, control of Minerva.

Despite the time for compliance being September 13, 2024, within only days of receiving the subpoena and without seeking permission from Minerva, Ms. Reed voluntarily produced documents to Plaintiffs that she had no legal right to produce. Upon learning Ms. Reed was represented by counsel on September 6, 2024, Minerva immediately notified her counsel that Minerva objected to the subpoena, and requested copies of the documents. Her counsel failed to respond at all. Through conferral, Plaintiffs' counsel represented that they have not reviewed the production and provided Minerva with copies to allow Minerva to assess the relevance and discoverability of the documents. Minerva reviewed the same, and confirmed that Ms. Reed produced a multitude of confidential business records, documents she had no legal right to produce, privileged communications, and documents that are outside the scope of discovery. For the reasons discussed below, this Court should quash the Reed Subpoena, or, alternatively, grant a protective order, and—in either scenario—direct the Plaintiffs to destroy the production without reviewing it.

## **Legal Standard**

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Barrington v. Mortage IT, Inc.*, 2007 WL 4370647, at *3 (S.D. Fla. Dec. 10, 2007). A court is *required* to quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," or that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–(iv). "[P]rivacy interests and confidentiality concerns can factor into a decision whether to quash a subpoena under Rule 45, even though the information requested by

the subpoena is not subject to a federal evidentiary privilege." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1336 (11th Cir. 2020). In analyzing undue burden under Rule 45(d)(3)(A)(iv), the court may consider several factors: "(1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (quoted favorably in *Jordan*, 947 F.3d at 1137). "The status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry." *Jordan*, 947 F.3d at 1337 (citing *Wiwa*, 392 F.3d at 818).

Further, a court is also *permitted* to quash a subpoena "[t]o protect a person subject to or affected by a subpoena" that requires disclosing "confidential research, development, or commercial information[.]" Fed. R. Civ. P. 45(d)(3)(B)(i). Under this subsection, "courts weigh the claim to privacy against the need for disclosure." *Jordan*, 947 F.3d at 1335 (quoting *Festus & Helen Stacy Found., Inc. v. Merrill Lynch, Pierce Fenner & Smith Inc.*, 432 F. Supp. 2d 1375, 1380 (N.D. Ga. 2006)).

A person served with a subpoena duces tecum is required to produce responsive documents within "that person's possession, custody, or control[.]" Fed. R. Civ. P. 45(a)(1)(iii). "The party seeking production bears the burden of establishing that the opposing [person] has control over the documents sought." *de Fernandez v. CMA CGM S.A.*, 2024 WL 3580949, at *2 (S.D. Fla. July 30, 2024) (Damian, J.) (quoting *Al-Saadi v. Annchery Fajas USA, Inc.*, 2021 WL 8773350, at *3 (S.D. Fla. Nov. 29, 2021)). "Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984); *see also de Fernandez*, 2024 WL 3580949, at *2 (citing *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D.

4

468, 471 (S.D. Fla. 2011), for the proposition that control means the person "has the right, authority, or practical ability to obtain the materials sought on demand").

Consequently, a person served with a subpoena in his or her individual capacity cannot be compelled to produce her employer's documents because such documents are not deemed to be in the employee's own possession, custody, or control, even if they presently or previously have access to such documents. *See, e.g.*, *Siegmund*, 746 F. App'x at 891 (affirming district court's denial of motion to compel defendant directors to respond to requests for production of documents where the directors had already resigned from the nominal defendant corporation, because movant was unable to establish that directors retained sufficient control over the corporation's documents); *Learning Connections, Inc. v. Kaufman, Englett & Lynd, PLLC*, 280 F.R.D. 639, 640 (M.D. Fla. 2012) (granting motion for protective order or, alternatively, to quash subpoena for undue burden where individual was served in her individual capacity with subpoena for documents belonging to her employer); *Developmental Techs., LLC v. Valmont Indus., Inc.*, 2015 WL 12844286, at *2–3 (M.D. Fla. Sept. 2, 2015) (granting non-party's motion for protective order on the basis that non-party was not required to produce responsive documents belonging to his employer that were not within his possession, custody, or control).

Finally, the court may grant a protective order for good cause to protect a person from oppression or undue burden or expense. Fed. R. Civ. P. 45(c)(1). "Good cause is defined as a "sound basis or legitimate need to take judicial action." *Mt. Hawley Ins. Co. v. Plymouth Plaza, LLC*, 2023 WL 8678893, at *2 (S.D. Fla. Nov. 6, 2023) (quoting *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987)). In fashioning a protective order, the court may forbid disclosure of documents or limit the scope of disclosure to certain matters. Fed. R. Civ. P. 26(c)(1)(A), (D). A party has standing to move for a protective order if a non-party subpoena seeks

#2938925v2-998944.0007

irrelevant or overbroad information or otherwise fails to comply with the scope of discovery under Rule 26. *See Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429–30 (M.D. Fla. 2005); *see also* Fed. R. Civ. P. 26(b)(1).

**Argument**

**I. The Court should quash the Reed Subpoena, or, alternatively, grant a protective order that in either instance requires Plaintiffs destroy the records produced by Ms. Reed because they were outside the scope of discovery, and they were not Ms. Reed's records to produce.**

This Court should quash the Reed Subpoena or grant the requested protective order for two reasons. First, the Reed Subpoena is overbroad, disproportionate to the needs of the case, and seeks impermissible disclosure of protected information. Second, Minerva's documents are not within Reed's individual possession, custody, or control. These bases are addressed in turn.

**A. The Reed Subpoena is overbroad, disproportionate to the needs of the case, and seeks impermissible disclosure of protected commercial and financial information.**

In an overbroad and disproportionate fashion, the Plaintiffs impermissibly sought all of Minerva's protected commercial and financial information. Ms. Reed produced a substantial portion of such documents, along with additional documents belonging to third parties, without having any right to produce such documents on behalf of the companies. Thus, the production should be destroyed by Plaintiffs because they should not be receiving or reviewing documents that are outside the scope of discovery. The production is itemized in **Exhibit C** hereto, but to summarize, Ms. Reed produced:

- Minerva's entire QuickBooks file;
- Minerva's 2019 and 2020 tax returns;
- thirty-seven Minerva credit card statements;
- six Minerva checking account statements;
- an engagement letter with the undersigned law firm and communication between Minerva and Tripp Scott, P.A.;
- a spreadsheet of banking information for non-parties;

6

- various wire confirmations;
- three years of tax returns for non-party Eagent Direct, Inc.;
- operating and shareholder agreements for non-party Eagent Direct, Inc.;
- a non-party employee's W-2

Ms. Reed did <u>not</u> produce a single record that belongs to her individually, and instead, turned over reams of company documents that she had no legal right to produce, and that are outside the scope of discovery because they are disproportionate to the needs of the case and are not relevant to the allegations against Minerva or Bowsky.

As framed in the Amended Complaint, the Minerva Defendants' liability is premised on their purchase and generation of leads that purportedly were generated using deceptive advertising, which Plaintiffs contend rendered the Minerve Defendants part of a RICO enterprise with Enhance, TrueCoverage, and other similar entities. The documents reflecting who Minerva purchased leads from, the content of the advertisements Minerva ran, and the content that Minerva approved are not reflected in its tax returns or bank statements, much less the tax returns of non-party Eagent or the W2 of a non-party employee. For example, Minerva's Operating Agreement or any other "corporate records" are not relevant whatsoever to the allegations in the Amended Complaint pertaining to the wrongdoing that the Minerva Defendants allegedly committed as to the sale of "dirty" leads.

Similarly, Medigap's corporate records are not relevant to the Minerva Defendants, especially in light of the facts that Medigap is not named as a defendant in this lawsuit and the records are being sought from Ms. Reed, a completely unrelated individual in her personal capacity. Out of the 882 allegations in the Amended Complaint, only two reference Medigap, and neither of these allegations implicates the Minerva Defendants' wrongdoing with respect to Medigap. *See* Am. Compl. ¶¶ 176, 210 (D.E. 63). Thus, Medigap's corporate governance

7

documents and documents pertaining to Mr. Bowsky's participation in the sale of Medigap are not relevant to the claims in the Amended Complaint.

During conferral, Plaintiffs stated that the records are being sought in order identify what companies Minerva purchased leads from and sold leads to. That could be requested through an interrogatory, or a simple request for production for 'documents sufficient to show who Minerva purchased leads from and sold leads to.' That information is not even reflected on, for example, a tax return of Minerva, let alone of non-party Eagent. Plaintiffs do not need to review years of bank statements, tax returns, non-party corporate documents, non-party-employee W-2's, and all the data contained in a QuickBooks file to discover who Minerva bought leads from and sold such leads to.

Even if it is determined that Reed was allowed to produce these records despite them not being her records individually, this confidential information constitutes protected commercial and financial information that is outside the scope of discovery. *See* Fed. R. Civ. P. 26(c)(1)(G); Fed. R. Civ. P. 45(d)(3)(A)(iii), (B)(i). "[P]arties have a personal interest in their financial records sufficient to confer standing to challenge a subpoena directed to a third-party." *Frenkel v. Acunto*, 2014 WL 4680738, at *3 (S.D. Fla. Sept. 19, 2014) (collecting cases); *see also Auto-Owners Ins. Co.*, 231 F.R.D. at 429 (explaining that a party has standing to challenge a non-party subpoena if the party "alleges a 'personal right or privilege' with respect to the subpoena[]" (quoting *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979))).

Here, Minerva has an expectation of privacy in its own financial records. These financial records necessarily encompass transactions with non-parties to this suit and would have no bearing on the claims at issue in this lawsuit. Minerva did not authorize Ms. Reed to retain the records, and

8

it was inappropriate for the Plaintiffs to seek them from her instead of the companies the records belong to.

### B. Minerva's documents are not within Reed's individual possession, custody, or control.

The Reed Subpoena seeks production of communications and documents reflecting Minerva's revenue and expenses; Minerva's entire financial records; Minerva's use of certain programs and practices within its business; Minerva's corporate records; Medigap's sale; and Medigap's corporate records. Ex. A, Request Nos. 1–9. Other than communications between Ms. Reed and the Minerva Defendants that could have taken place after her separation from the company, all the categories of documents ask Reed—in her individual capacity—to produce Minerva's business records and documents, but such records are legally within the possession, custody, or control of Minerva, Bowsky, or non-party MediGap, not Ms. Reed individually. *See* Ex. B ¶¶ 5–6, 12. Ms. Reed did not produce a single record that is in her individual possession, custody, or control, such as any personal communications responsive to the subpoena.

Plaintiffs cannot carry their burden of demonstrating that Reed—as a former bookkeeper of Minerva who was terminated years ago—has a legal right to produce Minerva's business records and financial information or records pertaining to the sale of Medigap. *See de Fernandez*, 2024 WL 3580949, at *2; *Siegmund*, 746 F. App'x at 891; *Learning Connections*, 280 F.R.D. at 640; *Developmental Techs.*, 2015 WL 12844286, at *3. Reed does not have the legal right, authority, or control over the business records of Minerva by virtue of being its former bookkeeper, and Minerva did not authorize Reed to take or retain any corporate documents when she was terminated. *See* Ex. B ¶ 5; *Searock*, 736 F.2d at 653; *de Fernandez*, 2024 WL 3580949, at *2.

To allow a party to obtain a company's financial records by subpoenaing a former bookkeeper individually, rather than seeking such records from the company itself, would create

a dangerous precedent. To follow Plaintiffs' strategy, Minerva could subpoena a local bank teller individually and request all of the Plaintiffs' bank statements. The teller, as an employee of the bank, will have access to the records; but of course he or she is not individually in possession, custody, or control of the records as the teller does not exercise control over the Plaintiffs or the bank. Because the Plaintiffs seek records that Ms. Reed has no legal right to produce, the Court should quash the subpoena, or, alternatively, enter a protective order requiring that Plaintiffs destroy the production without reviewing the same.

## **CONCLUSION**

For the reasons discussed above, Defendants Number One Prospecting, LLC dba Minerva Marketing and Brandon Bowsky respectfully request that this Court grant this Motion to Quash the Reed Subpoena, or, alternatively, issue a protective order that limits the requested discovery as set forth above—in both cases requiring the Plaintiffs destroy the documents produced by Monica Reed without reviewing the same.

**LOCAL RULE 7.1(C)(3) AND FED. R. CIV. P. 26(C)(1) CONFERRAL**

I certify that I conferred in good faith with all other parties regarding the relief requested in this Motion in an effort to resolve this dispute without Court intervention. Plaintiffs' counsel objects to the relief sought in this Motion in its entirety.

*/s/ Seth J. Donahoe*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 16th day of September 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.

Respectfully submitted,

**TRIPP SCOTT, P.A.**
*Attorneys for Defendants NUMBER ONE PROSPECTING, LLC d/b/a MINERVA MARKETING and BRANDON BOWSKY*
110 S.E. 6th Street, 15th Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 525-7500

By: *Seth J. Donahoe*
RYAN H. LEHRER, ESQ. (FBN: 0084423)
(rhl@trippscott.com; sxc@trippscott.com; cab@trippscott.com; eservice@trippscott.com)
SETH J. DONAHOE, ESQ. (FBN: 1004133)
(sjd@trippscott.com; sgc@trippscott.com)
JENNIFER H. WAHBA, ESQ. (FBN: 1010093)
(jmh@trippscott.com; jam@trippscott.com; cab@trippscott.com; eservice@trippscott.com)