UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-cv-60591-DAMIAN/Valle

| | |
|---|---|
| CONSWALLO TURNER, TIESHA FOREMAN, ANGELINA WELLS, PAULA LANGLEY, VERONICA KING, NAVAQUOTE, LLC and WINN INSURANCE AGENCY, LLC, individually and on behalf of all others similarly situated, | **CLASS ACTION** (Jury Trial Demanded) |
| Plaintiffs, | |
| v. | |
| ENHANCE HEALTH, LLC, TRUECOVERAGE, LLC, SPERIDIAN TECHNOLOGIES, LLC, BENEFITALIGN, LLC, NUMBER ONE PROSPECTING, LLC d/b/a MINERVA MARKETING, BAIN CAPITAL INSURANCE FUND L.P., DIGITAL MEDIA SOLUTIONS LLC, NET HEALTH AFFILIATES, INC., MATTHEW B. HERMAN, BRANDON BOWSKY, GIRISH PANICKER, and MATTHEW GOLDFUSS, | |
| Defendants. | |
| _____/ | |

**RESPONSE TO DEFENDANTS ENHANCE HEALTH LLC AND
MATTHEW B. HERMAN'S MOTION TO QUASH PLAINTIFFS'
SUBPOENAS ON NON-PARTIES MICHAEL CUGINI, BAIN CAPITAL
DISTRIBUTORS, AND BAIN CAPITAL INSURANCE FUND GENERAL
PARTNER, OR, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER**

CASE NO. 0:24-cv-60591-DAMIAN/Valle

Plaintiffs respond to the Motion to Quash Plaintiffs' Subpoenas on Non-Parties Michael Cugini, Bain Capital Distributors, and Bain Capital Insurance Fund General Partner, or, Alternatively, Motion for Protective Order [D.E. 91] (the "Motion") filed by Defendants Enhance Health LLC ("Enhance") and Matthew B. Herman ("Herman") (together, "Defendants").[1]

## INTRODUCTION

Nonparty Michael Cugini ("Cugini") is a former Enhance employee. Cugini contacted Plaintiffs on July 19, 2024, and said he had documents and information that support Plaintiffs' lawsuit against Enhance. He said he worked as the liaison between Enhance and its downlines and that he primarily communicated with Enhance's downlines and Herman via text. He intimated that he witnessed Enhance's participation in the cash card schemes and AOR Swapping and that he kept a set documents to protect himself. The Cugini subpoena seeks that document set. It is pertinent what documents Cugini believes are relevant to Plaintiffs' claims.

As for the subpoenas served on nonparties Bain Capital Insurance General Partner ("Bain G.P.") and Bain Capital Distributors ("Bain Distributors"), they seek documents relevant for a number of reasons. The Bain-related defendant in this case, Bain Capital Insurance Fund L.P. (the "Fund" or "Bain Insurance"), is an investment fund that invested $150 million in Enhance. Bain G.P. manages that Fund. Bain Distributors sells investments in the Fund. As part of the sales process, Bain G.P. and Bain Distributors almost surely performed due diligence of the Fund and/or its investments, including Enhance. That due diligence would have generated documentation, and a final risk analysis would have been included in the private placement memorandum provided to accredited investors. These documents — showing what Bain Insurance's manager and distributor knew and learned about Enhance over the course of Bain Insurance's investment in Enhance —

---

[1] The Motion exceeds the page limit set forth in Magistrate Judge Valle's Discovery Procedures.

are relevant to the issue of Bain Insurance's knowledge of Enhance's scheme and Bain Insurance's involvement in the alleged RICO Enterprise.

As set forth below, Defendants fail to show a basis to quash the subpoenas or any "good cause" needed for a protective order. The documents sought are neither confidential nor subject to any privilege. Rather, Plaintiffs seek documents owned by and in the possession of third parties, and nothing prevents the production of those documents to Plaintiffs pursuant to valid subpoenas. The third parties themselves have not objected to the subpoenas. The documents contain relevant information going to the heart of Plaintiffs' claim that Defendants and Bain Insurance participated in the alleged RICO Enterprise.

## THE MOTION SHOULD BE DENIED[2]

### A.  The Documents Are Within Cugini's Possession and Control

Defendants argue that the Cugini subpoena should be quashed because he does not have the "legal right" to produce the subpoenaed material, including Cugini's own communications. (Mot. at 5-7). The standard, however, is possession, custody or control. Even if a nonparty subpoena recipient does not own the documents, he can produce them if he has custody or possession of them. In *Bahamas Sales Associates, LLC v. Byers*, an employer sought a protective order to prohibit a former employee from producing documents the employer claimed had been **stolen** by the former employee. No. 3:08-cv-1012, 2014 WL 12992375, at *2 (M.D. Fla. Jan. 29, 2014). In denying the motion for protective order, which the court construed as a motion to quash, the court emphasized that the former employee had copies of those documents:

> The Court does not find particularly persuasive the suggestion that because Mr. McCracken allegedly stole or took the documents without permission (which Mr.

---

[2] The legal standards are set forth in Plaintiffs' Response to Defendants Number One Prospecting, LLC and Brandon Bowsky's Motion to Quash Plaintiffs' Subpoena on Non-Party Monica Reed or, Alternatively, Motion for Protective Order [D.E. 90].

2

> McCracken "vehemently dispute[s]," Response to Motion for Protective Order at 7), copies of the documents cannot now be subpoenaed from him. Mr. McCracken apparently had access to these documents through his position as a former employee of the Ginn Defendants.

*Id.* at *2. Here, the facts are similarly straightforward. Cugini remains in possession of the documents and may produce them pursuant to a properly issued subpoena.

Defendants fail to cite any cases holding that a former employee is forbidden from producing documents obtained during his or her work for a company — let alone the employee's own communications. The cases they cite contain no such prohibition. Defendants cite cases where the courts assess whether a party who is ***not*** in physical possession of the documents had the legal right to ***obtain*** the documents, and thus, were obligated to produce them. *See, e.g.*, *Al-Saadi v. Annchery Fajas USA, Inc.*, No. 20-23937, 2021 WL 8773350, at *3 (S.D. Fla. Nov. 29, 2021) (examining whether plaintiff could compel the defendants to produce documents that were in the possession of their affiliate); *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 502 (D. Kan. 2001) (denying plaintiff's motion to compel defendant to produce a nonparty's documents for which defendant did not have actual possession); *Learning Connections, Inc. v. Kaufman, Englett & Lynd, PLLC*, 280 F.R.D. 639, 639 (M.D. Fla. 2012) (denying plaintiff's motion to compel bank records from bank's *current* employee who herself moved to quash, particularly where plaintiffs responded that they would instead seek the documents from bank's records custodian); *Develop. Techs., LLC v. Valmont Indus., Inc.*, No. 8:14-CV-2796, 2015 WL 12844286, at *2 (M.D. Fla. Sept. 2, 2015) (denying motion to compel where nonparty's employee objected, stating that he did not have documents in his possession, custody, or control).

Defendants also cite *Modern Engineering, Inc. v. Peterson*, No. 07-CV-1055, 2007 WL 2680563, at *1-3 (C.D. Ill. 2007), but it supports Plaintiffs' position. There, the plaintiff sued its former employee. *Id.* at *1. The plaintiff moved to compel the defendant to produce documents

3

and correspondence he transmitted on behalf of his current employer, ACCS. *Id.* The defendant argued that the "information does not belong to Defendant and the records associated with these transactions are in the possession of ACCS, not Defendant." *Id.* at *2. The court agreed with the plaintiff "that ***'ownership' is not the issue*** — rather it is 'care, custody, and control.'" *Id.* at *3 (emphasis added). The court found the defendant was not obligated to ***obtain*** and produce corporate documents that belong to his current employer that were not in his possession, but ordered the defendant to produce "any responsive documents that Defendant 'presented' or 'transmitted' that are currently in Defendant's care, custody, or control." *Id.* at *3.

In sum, none of the cases Defendants cite involve a company's attempt to block a former employee from producing documents that are undisputably in the former employee's possession.

**B.**     **The Subpoenas Seek Relevant, Discoverable Information**

Defendants fail to show that the subpoenas seek production of irrelevant or confidential financial information. (Mot. at 7). First, Bain G.P. and Bain Distributors argue that their due diligence and risk analysis of Enhance has no bearing on Plaintiffs' claims because those parties did not invest in Enhance. While that may be true, Defendant Bain Insurance (the Fund) did invest in Enhance. As manager of the Fund, Bain G.P. would have performed due diligence on Enhance. As distributor of the Fund, so would Bain Distributors. The analysis and results associated with this due diligence, particularly any private placement memoranda describing the risks involved in the Fund's investment in Enhance, is relevant to Bain Insurance's knowledge of the risks of Enhance's business practices as described to accredited investors who invested in the Fund.

Moreover, Plaintiffs' request is broader than just pre-July 2022 due diligence. It seeks "analysis, review or investigation" documents from July 2022 or any time thereafter. For the same reasons, those documents are relevant to establishing that the Fund itself, or through its general

4

partner and/or distributor, learned about the cash cards and AOR swapping, and when it learned that information. The information goes directly to the actual knowledge element of the aiding and abetting claims and participation in the RICO enterprise.

Bain Insurance's audited and unaudited financial statements are also relevant to the extent they relate to Enhance.[3] Plaintiffs allege that Enhance was doing poorly in the Medicare space, and generally, in 2022. (Am. Compl. ¶ 298-300). Then Herman discovered the fraudulent ACA enrollment model and took the company in that direction. (*Id.* ¶ 300). Realizing the profitability, Bain Insurance allowed Enhance to make the pivot, despite receiving information from one of Enhance's managers that the ACA model was generating high numbers of consumer complaints. (*Id.* ¶¶ 300-01). Bain Insurance did not stop the practices because it generated tremendous profits. (*Id.* ¶¶ 304-05). The financial aspects of this timeline, such as Enhance starting poorly and then doing tremendously after converting to ACA, and Enhance driving the profitability of Bain Insurance itself, are likely found in financial statements held by Bain G.P. or Bain Distributors that relate to Enhance.

Defendants do not cite any cases in support of their argument that Plaintiffs "impermissibly" seek sensitive financial information that is not "discoverable." (Mot. at 7-9). As an initial matter, "a party seeking to quash a subpoena aimed at a party's financial records does not have standing to move to quash the subpoena under Rule 45 because the party has no expectation of privacy in the business transactions with other corporations." *Gian Biologics, LLC v. Cellmedix Holdings, LLC*, No. 2:15-CV-645, 2016 WL 6568014, at *5 (M.D. Fla. Nov. 4, 2016).

---

[3] Plaintiffs' request for financial documents were originally broader, see Mot. to Quash Exhs. B and C, but after meeting and conferring Plaintiffs agreed to narrow their request to "audited and unaudited financial statements related to the value of Enhance Health LLC," see *id*. Exhs. E and F.

5

Moreover, even if Enhance had standing — which it does not — Florida's constitutional protection of individual's privacy interests in their financial records "does not extend to business entities." *Network Commc'ns of Nw. Fla., Inc. v. Dep't of Revenue*, 334 So. 3d 707, 710 (Fla. 1st DCA 2022); *see also Fla. Ass'n of Prof'l Lobbyists, Inc. v. Div. of Legislative Info. Servs.*, No. 4:06cv123, 2006 WL 3826985, at *4 (N.D. Fla. Dec. 18, 2006) ("Lobbying firms have no right to privacy under the Florida Constitution because the right to privacy 'is a personal one, inuring solely to individuals.'"). And even where a privacy right does exist, "if those records are relevant to the issues in the case, they are discoverable." *Patel v. Fed. Ins. Co.*, No. 6:23- CV-1779, 2024 WL 916558, at *2 (M.D. Fla. Mar. 4, 2024). Thus, in addition to lacking standing and no recognized privacy interest, Enhance's arguments fail because Plaintiffs seek relevant documents.

Importantly, Plaintiffs have offered to mark and keep the records confidential. Plaintiffs have circulated a proposed confidentiality order to all the parties in the case, including Defendants. With respect to Defendants' argument that the financial documents might be shown to Plaintiffs Navaquote and WINN, mom-and-pop agencies that Enhance claims are "competitors," Plaintiffs have proposed a confidentiality agreement that would allow documents to be marked as "Attorney's Eyes Only." Enhance has yet to provide its comments to the proposed agreement, which Plaintiffs circulated on September 13, 2024.

Next, Defendants complain that the Cugini subpoena seeks his communications with Defendants regarding ACA Healthcare and AOR Swaps "without further limitation." (Mot. at 6). But these requests, which are already tailored to the key issues in this case like communications with Enhance, Herman or Bain Insurance regarding "AOR Swaps" or "Free Cash Cards," need not be limited any further.

Defendants also argue that Plaintiffs' definition of "communications" in the Cugini

Subpoena is "virtually boundless" because it includes direct messages on social media, emails and text messages. (Mot. at 8). The definition of "communications" necessarily is broad in this case because communications primarily occurred through these various electronic means.

Defendants also argue, without basis, that the Cugini subpoena requires disclosure of sensitive business information. Defendants do not identify any basis that would preclude a former employee from responding to a lawful subpoena with relevant documents — let alone that former employee's own communications. Enhance does not identify any nondisclosure agreement, for example, let alone one that does not have an exception for lawful subpoenas. Regardless, Plaintiffs agree that any such documents can be marked confidential.

C. **Herman's Communications Are Discoverable**

Herman argues that the subpoena is somehow improper because it calls for communications between Cugini and Herman, and Herman claims he has a "personal right" to protect his communications. (Mot. at 9). But they are Cugini's communications too, and Herman makes no showing that the communications are somehow confidential. Herman cites a case that does not support his position. *See Mancuso v. Fla. Metro. Univ., Inc.*, No. 09-61984, 2011 WL 310726, at *1-3 (S.D. Fla. Jan. 28, 2011). In *Mancuso*, the plaintiff sued for back overtime wages and challenged a subpoena to AT&T. Contrary to Herman's characterization, the court did not broadly find that subpoenas for text messages were per se improper. Rather, the subpoena for telephone records was modified because, while records of the time sending text messages during working hours was relevant, the ***substance*** of the text messages was not relevant to the overtime claims in that particular case. *Id.* at *3. Here, the substance of text messages is relevant.

*Cellairis Franchise, Inc. v. Duarte*, 193 F. Supp. 3d 1379, 1381 (N.D. Ga. 2016), also undermines Herman's position. There, the court found the defendant lacked standing to challenge

7

a third-party subpoena seeking the defendant's communications with third parties. The court addressed whether the defendant in a non-compete case had "standing to attack subpoenas issued to mall operators, leasing agents, and other non-parties requesting evidence of his communications about leasing opportunities." *Id.* at 1381. The court outlined the general rule that "[a] party does not have standing to quash a subpoena served on a third party unless the party alleges a 'personal right or privilege with respect to the materials subpoenaed.'" *Id.* (citation omitted). Applying that standard, the court found "[t]he pending motion does not satisfy either category of protection" and ***denied*** the motion to quash, explaining:

> Defendant has not alleged any privilege at issue. And regarding "personal interest," defendant contends merely that the requested communications are "sensitive, confidential and proprietary." Yet, courts in this circuit have held, and this court agrees, that "that contention, without more, is not enough to give rise to standing. . . ." Thus, having failed to allege a personal right or privilege, defendant lacks standing to raise the merits of his motion to quash subpoenas.

*Id.* at 381-82. (citations omitted). Likewise, here, the Court should deny the Motion.

D. **Plaintiffs Can Subpoena the Documents from Third Parties**

Defendants argue that their "personal rights in these documents exist even if a non-party creates or maintains them." (Mot. at 10). In support, they cite *U.S. ex rel. Willis v. SouthernCare, Inc.*, No. CV410-124, 2015 WL 5604367 (S.D. Ga. Sept. 23, 2015). In that case, the non-party worked as defendant's independent review organization for Medicare compliance. *Id.* The court simply found that defendant had ***standing*** to raise certain challenges with respect to its own documents held by its agent, but ultimately ***denied*** the motion to quash, explaining that the plaintiff's "need for the IRO reports, given their relevancy and the protective order's mitigation of privacy concerns . . . outweighs [the third party and the defendant]'s right to keep their allegedly confidential commercial information totally private." *Id.* at *4. Here, as initial matter, the Bain documents are not Enhance's own documents held by its agent. Nor are Cugini's personal

8

communications. Regardless, like in *SouthernCare*, any concerns regarding privacy can be mitigated by the protective order Plaintiffs have already proposed.

Next, without first meeting their heavy burden of showing the documents sought are protected confidential documents and that the disclosure would be harmful to them, Defendants seek to shift the burden to Plaintiffs simply by arguing they have standing to challenge the subpoenas. They argue, "[s]ince Enhance Health and Mr. Herman have an interest in preventing disclosure of confidential information and communications, plaintiffs must 'show a substantial need for the testimony or material that *cannot be otherwise met* without undue hardship,'" citing *Rose v. T-Mobile U.S., Inc.*, No. 2:24-cv-473, 2024 WL 3103662 (M.D. Fla. June 24, 2024). (Mot. at 10). That case makes clear that the party seeking protection "must ***first*** establish that the information [sought] is indeed confidential and then demonstrate that its disclosure might be harmful. . . . This has been described as a heavy burden." *Id.* at *3 (citation omitted) (emphasis added). Only after the moving party satisfies that heavy burden does the proponent need to show a substantial need. *Id.* Ultimately, in *Rose*, the court found there was a substantial need and ordered the parties to craft a protective order. *Id.* Here, Defendants have not satisfied the burden of showing the information sought is confidential or proprietary or that the disclosure would be harmful. Moreover, like in the *Rose* case, the documents are highly relevant, and a protective order would resolve any concerns.

Next, Defendants argue that Plaintiffs should first seek information from Defendants "***at the appropriate time in the litigation*** instead of ***burdening non-parties***." (Mot. at 11) (emphasis added). There's no requirement that Plaintiffs do so. *See*, *e.g.*, *Diez v. Am. Landmark Mgmt., LLC*, No. 1:22-CV-20189, 2022 WL 22839520, at *2 (S.D. Fla. Sept. 13, 2022) ("Rule 45 does not require Plaintiff to establish that she is wholly unable to obtain information from Defendant

9

first before seeking information, whether by deposition or otherwise, from non-parties."). Indeed, under Rule 26(d)(3)(A) of the Federal Rules of Civil Procedure, "methods of discovery may be used in any sequence."[4]

Further, any burden on non-parties is for non-parties to raise, not Defendants. *See, e.g.*, *Leigue v. Everglades Coll., Inc.*, No. 22-CV-22307, 2022 WL 4110315, at *2 (S.D. Fla. Sept. 8, 2022) *(*"[A] party lacks standing to challenge subpoenas served on another 'on the grounds of oppression and undue burden placed upon the third parties where the non-parties have not objected on those grounds.") (citation omitted).

Also, there is unique relevance to seeking these documents from third parties. For example, to protect himself, Cugini said he kept particular documents he believed were relevant to the scheme. Plaintiffs are entitled to obtain that set documents from Cugini to discover what he chose to keep and deemed evidence of the scheme. As for the subpoenas to the Bain entities, Plaintiffs are seeking information about the recipients of the subpoenas, not about Defendant Bain Insurance.

Accordingly, Defendants' "you should have asked us first" argument does not establish good cause for a protective order staying compliance with the subpoenas.

## CONCLUSION

For the reasons stated above, this Court should deny the Motion.

---

[4] Both cases Enhance and Herman cite in support of their argument that Plaintiffs should first seek the documents from them involve situations where the plaintiff issued subpoenas to the defendants' ***clients***. (Mot. at 10-11) (citing *Serrala US Corp. v. Paschke*, No. 3:21-CV-907, 2022 WL 19333286, at *2 (N.D. Fla. Sept. 7, 2022); *Scrum All. Inc. v. Scrum, Inc.*, No. 4:20-CV-00227, 2020 WL 6559625, at *3 (E.D. Tex. Nov. 9, 2020)). The same concerns are not present here.

CASE NO. 0:24-cv-60591-DAMIAN/Valle

Dated: September 30, 2024

By: /s/ *Victoria J. Wilson*
Jason K. Kellogg, P.A.
Florida Bar No. 0578401
Primary email: jk@lklsg.com
Secondary email: ame@lklsg.com
Victoria J. Wilson
Florida Bar No. 92157
Primary email: vjw@lklsg.com
Secondary email: service@lklsg.com
Peter J. Sitaras
Florida Bar No. 1039141
Primary email: pjs@lklsg.com
Secondary email: acd@lklsg.com
100 Southeast Second Street
Miami Tower, 36th Floor
Miami, Florida 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789

Respectfully submitted,

By: /s/ *Jason R. Doss*
Jason R. Doss
Florida Bar No. 0569496
Primary email: jasondoss@dossfirm.com
1827 Powers Ferry Road SE
Building 23, Suite 100
Atlanta, Georgia 30339
Telephone: (770) 578-1314
Facsimile: (770) 578-1302

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 30, 2024, a true and correct copy of the foregoing was filed via CM/ECF and served upon parties registered with CM/ECF in this case.

By: /s/ *Victoria J. Wilson*