CASE NO. 0:24-cv-60591-DAMIAN/Valle

CONSWALLO TURNER, TIESHA
FOREMAN, ANGELINA WELLS,
PAULA LANGLEY, VERONICA
KING, NAVAQUOTE, LLC
and WINN INSURANCE AGENCY, LLC,
individually and on behalf of all others
similarly situated,

**CLASS ACTION**

(Jury Trial Demanded)

       Plaintiffs,

v.

ENHANCE HEALTH, LLC,
TRUECOVERAGE, LLC,
SPERIDIAN TECHNOLOGIES, LLC,
NUMBER ONE PROSPECTING, LLC
d/b/a MINERVA MARKETING,
BAIN CAPITAL INSURANCE FUND L.P.,
DIGITAL MEDIA SOLUTIONS LLC,
NET HEALTH AFFILIATES, INC.,
BENEFITALIGN, LLC,
MATTHEW B. HERMAN,
BRANDON BOWSKY, GIRISH PANICKER,
and MATTHEW GOLDFUSS,

       Defendants.

_____/

## [PROPOSED] ESI AND DOCUMENT PRODUCTION PROTOCOL

The following ESI Stipulation and [Proposed] Order ("ESI Protocol), is entered into

between (1) Plaintiffs, Conswallo Turner, Tiesha Foreman, Angelina Wells, Paula Langley,

Veronica King, NavaQuote, LLC, and Winn Insurance Agency, LLC (collectively, "Plaintiffs"),

and (2) Defendants, Enhance Health, LLC, TrueCoverage, LLC, Speridian Technologies, LLC,

Number One Prospecting, LLC d/b/a Minerva Marketing, Bain Capital Insurance Fund L.P., Digital

Media Solutions LLC, Net Health Affiliates, Inc., Benefitalign, LLC, Matthew B. Herman, Brandon

Bowsky, Girish Panicker, and Matthew Goldfuss (collectively, "Defendants") in the above-captioned case (the "Lawsuit").

To expedite discovery in the Lawsuit, pursuant to this Court's authority and with the consent of the Parties, it is agreed:

## 1. **PURPOSE**

This Order shall govern discovery of electronically stored information ("ESI") in this Lawsuit as a Supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

## 2. **COOPERATION**

a. **Proportionality**. The proportionality standard set forth in Federal Rule of Civil Procedure 26(b)(2)(C) must be applied in this Lawsuit.

## 3. **SEARCH & COLLECTION PROCEDURES**

Should the producing party employ a search term process to identify and/or compile responsive ESI, the producing party shall, prior to implementing search terms and within 14 days of serving written responses and objections to Requests for Production, inform the requesting party of the proposed search terms and scope of the search, including the custodial and non-custodial sources to be searched. The parties shall meet and confer in good faith regarding the search terms and search processes and reserve the right seek appropriate relief from the Court. If the producing party elects to identify responsive documents through the use of technology-assisted review or the like, the producing party shall disclose such intent to the requesting party, and the parties shall thereafter confer regarding the scope and use of such methods. Nothing herein precludes a requesting party from seeking additional searches or subsequent modifications of the search terms and process for good cause or based on the discovery of previously unknown facts.

**4.    PRODUCTION MEDIA & PROTOCOL**

The production media for document productions shall be secure FTP link provided via email at the time a production letter is emailed, unless the parties agree otherwise. If the parties agree, production media may be a CD-ROM, DVD, external hard drive (with standard PC compatible interface), or USB drive, so long as such production media is sent no slower than overnight delivery via FedEx, UPS, or USPS. Each item of production media (or in the case of FTP productions, each production transmittal letter) shall include: (1) text referencing that it was produced in the *Turner v. Enhance Health LLC* lawsuit, (2) the production date, and (3) the Bates number range of the materials contained on such production media item.

**5.    PRODUCTION FORMATS**

a.    **Production Format**. Unless the parties agree to a different format, documents should be produced in .tiff or searchable .pdf format and named according to the Bates number of the corresponding image. Each .tiff or .pdf file should be assigned a unique name matching the Bates number of the corresponding image. The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to discoverable documents shall be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder All images should be provided in a single-page Group IV TIFF or searchable PDF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced .tiff or .pdf image. These .tiff or .pdf images should be provided in a separate folder and the number of TIFF or PDF files per folder should be limited to 1,000 files.

**b.** **Production of Excel**. Unless such materials contain privileged information, spreadsheets, audio files, photos, video files, and Excel shall be produced in Native Format. If the files, however, contain privileged information, they need not be produced in Native Format but shall be produced with the extracted text and metadata fields set forth in this Order, and in redacted format, except to the extent the extracted text or metadata fields are themselves redacted. If a party in good faith believes the native file is necessary for interpretation of the document, the parties shall work together to determine a plan for handling the text that needs to be redacted.

**c.** **Text Files**. All unredacted documents should be provided with complete document-level extracted text files, where extracted text is available. The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files. These TXT files may either be provided in a separate folder or included in the same folder as the corresponding images. The number of TXT files per folder should be limited to 1,000 files.

**d.** **Other Native File Production**.

    i.    The parties shall meet and confer to discuss requests for the production of other files in native format, on a case-by-case basis. If the parties are unable to reach agreement with regard to requests for additional documents in native-file format, the parties reserve the right to seek relief from the Court.

    ii.    A placeholder embossed with the corresponding confidentiality designation and Bates number shall be produced for all ESI produced in native format. The placeholder should include the words "Document produced in native format."

    iii.    In the event a document is produced in Native and that document requires redaction, the redacted document shall be produced. ESI produced in native

format shall be produced with all the metadata contained in or associated with that file to the extent technologically possible.

    iv.    Extracted text taken from native files shall be provided at a document level. There shall be one text file per document, using the same name as the beginning Bates number (Document ID) of the document. The extracted text file for a document shall reside in the same location (file directory) as the images for that document. The text file associated with any redacted document shall exclude redacted text (i.e., the producing party can OCR the redacted image of the unstructured ESI and replace the original extracted text).

    **e.**    **Color**. ESI containing color (for example, graphs, pictures, or color marketing materials) shall be produced as color images for each such document if color is necessary to reasonably understand the content of the ESI. Otherwise, a party may request the producing party to produce particular documents or categories of documents in color where reasonable. A party shall not be precluded from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties shall meet and confer in good faith to try to resolve it.

    **f.**    **De-duplication**. The parties shall make reasonable efforts to de-duplicate ESI. Exact duplicate documents shall be de-duplicated horizontally across custodians. ESI shall be considered duplicative if it has the same content including metadata and where the family of documents are all exact duplicates. If a producing party elects to de-duplicate horizontally, all

custodians who were in possession of de-duplicated document must be identified in the Custodians metadata field in **Exhibit A**.

**g.** **Confidentiality Endorsements**. The producing party must brand any confidentiality or similar endorsements in a corner of the images pursuant to the protective order entered in this Lawsuit. Those endorsements must be in a consistent font type and size.

**h.** **Email Threading**. To reduce the volume of entirely duplicative content within email threads, the parties may utilize "email thread suppression." As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string, provided that all previous emails in the thread reflect full sender, recipient, and date and time stamp information, and provided that the software used to identify these "non-inclusive" threads is able to identify any differences to the thread such as changes in recipients (e.g., side threads, subject line changes), dates, selective deletion of previous thread content by sender, etc. To the extent such differences exist, documents with such differences shall be produced. For purposes of this paragraph, only email messages in which the parent document, senders and recipients (including blind copy), and all attachments are exactly the same shall be considered duplicates. Email thread suppression may not be used where any of the emails or attachments included in the thread are withheld or redacted.

**i.** **Custodian Designations in De-duplicated Production**. To the extent that deduplication is used, the parties expressly agree that a document produced from one custodian's file but not produced from another custodian's file as a result of deduplication shall nonetheless be deemed as if produced from that other custodian's file for purposes of deposition, interrogatory, request to admit and/or trial. The custodian associated with the first copy of a document processed

shall be considered the primary custodian for that document (the custodian who shall be used as the basis for determining which other collected documents are duplicates). Each production shall include an "All Custodian" field listing of every custodian or source collected for production and who/which possessed a duplicate document and where the document was deduplicated during processing. The "All Custodian" field shall be updated by the producing party via an overlay file if rolling collections result in changes to the field post-production.

**j.** **Handwritten Notes, Track Changes or Other Alterations**. If there are any handwritten notes, or any other markings, on a document, it shall not be considered a duplicate. Any document that contains an alteration, handwritten note, marking on, or addition to the original document shall be treated as a distinct version, and shall be produced as such. These alterations include, but are not limited to, handwritten notes, electronic notes/tabs, edits, highlighting, or redlining. The requesting party may request production of a color copy (in native or otherwise) of a document if it determines that such a color copy shall assist in deriving the meaning of the document and the request is otherwise reasonable and proportional. If a document contains track changes and/or comments, the producing party shall image the document showing the tracked changes and/or comments.

**k.** **Metadata Fields and Processing**. Each of the metadata and index fields set forth in Exhibit A shall be produced for that document, to the extent such metadata is available. If the producing party becomes aware of an issue extracting a category of agreed-upon metadata, the producing party must notify the other party and meet and confer to arrive at a mutually acceptable resolution of the issue.

**l.** **Parent-Child Relationships**. Parent-child relationships refer to the association between an attachment and its parent document. Parent-child relationships must be preserved.

7

Family relationships often exist between an email and its attachments, but can also be found amongst stand-alone documents and files originally contained within that parent document, which may subsequently be de-embedded as part of discovery processing.

**m.** **Redaction**. The parties agree that where ESI items need to be redacted, they shall be produced solely in .pdf or .tiff with each redaction clearly indicated, except in cases where the documents cannot be rendered to .pdf or .tiff in a readable manner (such as spreadsheets). In that case, the document may be redacted natively as long as a pristine copy of the original document is maintained. If the items redacted and partially withheld from production are audio/visual files, the producing party shall provide the unredacted portions of the content, where reasonably feasible. If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the Producing party to produce the unredacted portion of the content.

If a party redacts documents or ESI, the redaction shall be clearly visible on the face of the document to the extent possible, e.g., "PII," or "PHI."

**n.** **Privilege and Privilege Logs**. The parties agree that the following privileged communications or documents need not be included in a privilege log: (a) work product of outside legal counsel; (b) any internal communications by a party's outside law firm; and (c) communications with the outside law firm that postdate the filing of the consolidated complaint.

If only part of a document contains privileged information, the responding party shall redact only the allegedly privileged information and produce the remainder of the document or ESI.

**o.** **Load Files**. Documents must be provided with (1) a delimited metadata file (.dat or .txt); (2) an image load file; and (3) a text file.

p.    **Encryption**. To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing party. In such cases, the producing party shall transmit the encryption key or password to the requesting party, under separate cover.

6.    **SPECIAL ESI ISSUES**

a.    **Hidden Text**. ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments. For any document which the requesting party reasonably believes includes hidden content, tracked changes or edits, comments, notes, or other similar information viewable within the native file, at a requesting party's reasonable request, the producing party shall provide the native file, or if possible an image file of a version showing the hidden content, if there is such content. A party shall not be precluded from objecting to such requests as unreasonable in number, timing, or scope.

b.    **Production of Structured Data**. Certain types of databases are dynamic in nature and will often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Thus, a party may opt to produce information from databases in an alternate form, such as a report or data table. These reports or data tables will be produced in a static format. The parties agree to identify the specific databases, by name, that contain the information that parties produce, and meet and confer regarding the format of production.

c.    **Objections**. Nothing in this Stipulation and Proposed Order shall be interpreted to waive any objections to the relevance, responsiveness, production, discoverability, possession, custody, control, or confidentiality of Documents, including (without limitation) objections regarding the burden or overbreadth of document requests.

     **d.**     **No Waiver of Rights Regarding Review**. By entering this Order, a party is not giving up its right to review its documents for privilege or any other reason (including to identify non-responsive documents) and the existence of this Order cannot be used to compel a party to produce documents without review.

**EXHIBIT A**

**Metadata Fields**

The following default fields shall be provided for all documents in the production.

| Field Name | Description |
|---|---|
| Begin Bates | Beginning Bates Number of the Email, Application File, or Paper Document |
| End Bates | Ending Bates Number of the Email, Application File, or Paper Document |
|  |  |
| Bates Beg Attachment | Bates Beg for family |
| Bates End Attachment | Bates End for Family |
| Att Count | Number of attachments to an email |
|  |  |
| Confidentiality | Field populated with the appropriate confidentiality designation for the Document. |
| Custodian | Multi-value field for custodians identified during collection. All documents should have a custodian value present. |

| | |
|---|---|
| All Custodians | Identification of all custodians the producing party agreed to produce and where a duplicate of the Document was sourced and de-duplicated when processing the documents. |

A. **Metadata Fields**

The following metadata fields associated with emails, attachments and non-email files will be exchanged, where available. Any privileged metadata associated with any redacted documents may be withheld from the production.

| Field Name | Email or Non-Email | Description |
|---|---|---|
| Subject/Title | Email | Subject line of the email |
| File Extension | Non-Email | File extension |
| Sent Date | Email | Email Sent date |
| Received Date | Email | Email Received date |
| Created Date | Non-Email | Date Application File was created. Note that Created Date may be subject to change during collection or processing as a result of auto date function or other processes. |
| Modified Date | Non-Email | Date Application File was last modified |
| Modified Time | Non-Email | Time Application File was last modified |
| Author/From | Both | Author of the Application File or sender of the Email |
| Recipient/To | Email | Recipients of the Email |
| Copyee | Email | CCs of the Email |

| BCC | Email | BCCs of the Email |
|---|---|---|
| File Type | Both | Email, Spreadsheet, Word Processing Document, etc. |
| | | |
| Path to Native | Both | Location of the native file within the Production |
| Path to Text | Both | Location of the extracted text file within the Production |
| | | |
| Email Received Time | Email | Time Email was received |
| File Created Time | Non-Email | Time Application File was created |
| | | |
| Hash Value | Non-mail | Value commonly used to de-duplicate files or identify duplicates |

Dated October 8, 2024

By: /s/ DRAFT
LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP
Jason K. Kellogg, P.A.
Florida Bar No. 0578401
Primary email: jk@lklsg.com
Secondary email: ame@lklsg.com
Victoria J. Wilson
Florida Bar No. 92157
Primary email: vjw@lklsg.com
Secondary email: service@lklsg.com
Peter Sitaras
Florida Bar No. 1039141
Primary email: pjs@lklsg.com
Secondary email: acd@lklsg.com
100 Southeast Second Street
Miami Tower, 36th Floor
Miami, Florida 33131
Telephone: (305) 403-8788

Respectfully submitted,

By: /s/ DRAFT
Samuel G. Williamson
Fla. Bar No. 1033817
samwilliamson@quinnemanuel.com
Olga M. Vieira
Fla. Bar No. 29783
olgavieira@quinnemanuel.com
2601 South Bayshore Dr., Suite 1550
Miami, FL 33133
Telephone: (305) 496-2988

*Attorneys for Enhance Health, LLC, and Matthew B. Herman*

12

Facsimile: (305) 403-8789

By: /s/ *DRAFT*
THE DOSS FIRM LLP
Jason R. Doss
Florida Bar No. 0569496
1827 Powers Ferry Road Southeast Atlanta,
Georgia 30339
Telephone: (770) 578-1314
Facsimile: (770) 578-1302
Primary email: jasondoss@dossfirm.com

By: /s/ *DRAFT*
**TRIPP SCOTT, P.A.**
RYAN H. LEHRER, ESQ. (FBN
0084423)
rhl@trippscott.com; sxc@trippscott.com;
cab@trippscott.com;
eservice@trippscott.com
SETH J. DONAHOE, ESQ. (FBN
1004133)
sjd@trippscott.com; sgc@trippscott.com
JENNIFER H. WAHBA, ESQ. (FBN
1010093)
jmh@trippscott.com;
jam@trippscott.com
110 S.E. 6th Street, 15th Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 525-7500

*Attorneys for Defendants Number One
Prospecting, LLC d/b/a Minerva
Marketing and Brandon Bowsky*

By: /s/*DRAFT*
Guy A. Rasco, Esq. (F.B.N.: 727520)

And of Counsel (*pro hac vice
forthcoming*)
Amy E. Richardson, Esq.
HWG, LLP
333 Fayetteville Street, Suite 1500
Raleigh, NC 27601
Patrick P. O'Donnell, Esq.
Walter E. Anderson, Esq.
HWG, LLP
1919 M. Street N.W., Suite 800
Washington, D.C. 20036

*Attorneys for TrueCoverage,
LLC, Speridian Technologies, LLC,
Benefitalign, LLC, Girish Panicker, and
Matthew Goldfuss*

# [PROPOSED] ORDER

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: _____, 2024          _____
                                        MELISSA DAMIAN
                                        UNITED STATES DISTRICT COURT JUDGE