# Exhibit 1

DEPARTMENT OF HEALTH AND HUMAN SERVICES
Centers for Medicare & Medicaid Services
Center for Consumer Information and Insurance Oversight
200 Independence Avenue SW
Washington, DC 20201



September 2, 2024

**VIA ELECTRONIC MAIL AND UNITED STATES POSTAL SERVICE:**
ashwini.deshpande@truecoverage.com; Sarika.balakrishnan@truecoverage.com;
manal.mehta@benefitalign.com; tamara.white@benefitalign.com, girish.panicker@speridian.com

TrueCoverage LLC
c/o Ashwini Deshpande
2400 Louisiana Blvd NE
Building 3, Suite 100
Albuquerque, NM 87110

TrueCoverage LLC dba Inshura
c/o Ms. Sarika Balakrishnan
2400 Louisiana Blvd NE
Building 3, Suite 100
Albuquerque, NM 87110

BenefitAlign LLC
c/o Manal Mehta and Tamara White
2400 Louisiana Blvd NE
Building 3
Albuquerque, NM 87110

**RE: Suspensions of Web-broker and Enhanced Direct Enrollment Entity Activities and Notice of Compliance Audit**

Dear Ashwini Deshpande, Sarika Balakrishnan, Manal Mehta, and Tamara White:

The Centers for Medicare & Medicaid Services (CMS), on behalf of the Department of Health and Human Services (HHS), administers the program under which licensed web-brokers may operate non-Marketplace websites or information technology (IT) platforms. Using these websites and platforms, agents and brokers may assist with consumer health insurance enrollments through the Federally-facilitated Marketplaces (FFMs) and State-based Marketplaces on the Federal Platform (SBM-FPs) (collectively, Marketplace or Marketplaces).

Pursuant to 45 C.F.R. §§ 155.220(c)(4)(ii) and 155.221(e), and attributable to credible allegations of misconduct described in this notice, CMS is immediately suspending True Coverage LLC's, TrueCoverage dba Inshura's, and BenefitAlign's (collectively, the Speridian

Companies[1]) ability to transact information with the Marketplaces. CMS is also suspending the Speridian Companies' ability to make its non-Marketplace websites available to other agents and brokers to transact information with the Marketplaces. Pursuant to 45 C.F.R. § 155.220(c)(5) and section X.m. of the executed Enhanced Direct Enrollment (EDE) Agreement, section X.l. of the executed Web-Broker Agreement, and section 15 of the executed Interconnection Security Agreement (ISA), CMS also notifies the Speridian Companies of its intent to conduct a compliance review and audit.

**Background**

CMS operates a program through which approved web-brokers registered with CMS may host an application for Marketplace coverage on their own websites. Such entities operate as Direct Enrollment (DE) or EDE entities[2] and must comply with the requirements of section 1312(e) of the Patient Protection and Affordable Care Act and associated regulations, including 45 C.F.R. §§ 155.220 and 155.221.

In accordance with federal requirements, the Speridian Companies voluntarily executed the following agreements with CMS to participate in the Marketplace as an approved web-broker and DE/EDE partner, effective for plan years 2022, 2023, and 2024 (collectively, the CMS Agreements):

- Agreement Between Web-Broker TrueCoverage, LLC and CMS for the Individual Market FFM and SBM-FP;

- Agreement Between Web-Broker BenefitAlign, LLC and CMS for the Individual Market FFM and SBM-FP;

- EDE Agreement between EDE Entity BenefitAlign LLC and CMS for the Individual Market FFM and SBM-FP;

- EDE Agreement between EDE Entity TrueCoverage dba Inshura and CMS for the Individual Market FFM and SBM-FP; and

---

[1] Speridian Global Holdings LLC has common ownership and control of TrueCoverage, Inshura, and BenefitAlign, and their IT platforms for participating in the Marketplaces operate on the same IT infrastructure. This suspension notice collectively addresses all three entities as the Speridian Companies.

[2] "Direct Enrollment is a service that allows approved Qualified Health Plan (QHP) issuers and third-party web-brokers (online insurance sellers) to enroll consumers in Exchange coverage, with or without the assistance of an agent/broker, directly from their websites. In the 'Classic' DE experience … consumers start on a DE entity's (e.g., issuer or web-broker) website by indicating they are interested in Exchange coverage. The issuer or web-broker redirects users to HealthCare.gov to complete the eligibility application portion of the process. After completing their eligibility application, HealthCare.gov redirects the user back to the issuer or web-broker website to shop for a plan and enroll in Exchange coverage…. The Enhanced Direct Enrollment user experience goes well beyond the plan shopping and enrollment experience that is available via Classic DE. EDE is a service that allows approved EDE entities (e.g., QHP issuers and web-brokers approved to participate in EDE) to provide a comprehensive consumer experience including the eligibility application, Exchange enrollment, and post-enrollment year-round customer service capabilities for consumers and agents/brokers working on behalf of consumers, directly on issuer and web-broker websites. Through EDE, approved EDE Entities build and host a version of the HealthCare.gov eligibility application directly on their websites that securely integrates with a back-end suite of FFE application programing interfaces (APIs) to support application, enrollment and more. " *Direct enrollment and enhanced direct enrollment.* CMS.gov. (n.d.). https://www.cms.gov/marketplace/agents-brokers/direct-enrollment-partners

- ISA between EDE Entity BenefitAlign LLC and CMS for the Individual Market FFM and SBM-FP.

The Speridian Companies signed and executed the CMS Agreements, thus voluntarily agreeing to accept and abide by the terms of the CMS Agreements and the federal regulations governing Marketplace web-brokers and DE/EDE partners at 45 C.F.R. §§ 155.220 and 155.221.[3] These terms and regulations provide, in relevant part, the right for CMS or its designee to conduct compliance reviews and audits, including the right to interview employees, contractors, and business partners of an EDE Entity and to audit, inspect, evaluate, examine, and make excerpts, transcripts, and copies of any books, records, documents, and other evidence of the web-broker's and EDE Entity's compliance with applicable requirements.[4]

**The Speridian Companies' Previous Record of Noncompliance with CMS Regulations and Agreements**

The Speridian Companies have a history of noncompliance with CMS regulations and agreements dating back to 2018. On April 19, 2018, TrueCoverage had its 2018 CMS agreements terminated, which ended their ability to transact information with the Marketplace, due to the severe nature of its suspected and, in some cases, admitted violations of CMS regulations.[5] After the termination, the Speridian Companies were not registered with the Exchanges or permitted to assist with or facilitate enrollment of qualified individuals through the Exchange, including direct enrollment. The Speridian Companies admitted that their agents and brokers submitted false Social Security Numbers in connection with Marketplace eligibility applications, and CMS had reasonable suspicions of other fraud, improper enrollments, and misconduct by the Speridian Companies. The Speridian Companies regained their connection to CMS in 2019 after CMS, satisfied with the good-faith evidence provided, entered into Exchange agreements in Plan Year 2019.

On October 3, 2022, CMS suspended TrueCoverage dba Inshura for noncompliance for failing to implement procedures to verify consumer identity as required by the CMS EDE guidelines.[6] The suspension was lifted when True Coverage dba Inshura instituted procedures for consumer identity proofing. On April 6, 2023, CMS suspended BenefitAlign for attempting to access the FFM's software testing environment from India on March 8, 2023. This suspension was lifted after BenefitAlign submitted a corrective action plan to remediate the issue. Since then, we have corresponded with Speridian Companies on a near monthly basis on a variety of noncompliance issues that did not rise to the level of requiring a system suspension but nonetheless raised consumer protection and other concerns on the part of CMS.

**The August 8, 2024 Suspension**

CMS began a review of the Speridian Companies' DE platforms after CMS received an

---

[3] 45 C.F.R. §§ 155.220(a) and 155.221(a)(2). *See also* definition of "web-broker" at 45 C.F.R. § 155.20; EDE Agreement, section II and section III; Web-Broker Agreement section II.
[4] EDE Agreement at section X.m.; Web-Broker Agreement at section X.l.; ISA at section 15
[5] C.F.R. § 155.285(a)(1)(i). Also see 45 C.F.R. § 155.220(d)(3) and (j)(2)(ii). A termination here is distinct from a suspension. When an entity is terminated from the Marketplace its CMS Agreements are voided and the entity cannot assist or facilitate consumer enrollment. The only way to get back onto the Marketplace is to re-apply (if permitted, as was the case with True Coverage's suspension in 2018). A suspension also blocks an entity's ability to interact with the Marketplace, but can be ended if CMS's concerns are remediated.
[6] 45 C.F.R. § 155.221(e) and Section V.C of the EDE Business Agreement

unconfirmed report on July 24, 2024 that the TrueCoverage and BenefitAlign technical teams were based overseas, and allegedly were able to access the True Coverage and BenefitAlign platforms, including consumer PII submitted to those platforms, in violation of CMS rules.[7] Speridian Companies' DE platforms' technical infrastructure.

On August 6, 2024, CMS began an initial risk assessment of the connection between the Speridian Companies and the Marketplace. This assessment concluded that there existed critical risk to CMS infrastructure and consumers. This assessment was based on the evaluation of five factors: Foreign Ownership, Control, or Influence; Significant Adverse Information; Supply Chain Tier Structure Concerns; Company Product Related Concerns; and the Company Cyber Vulnerabilities.

The Speridian Companies use a hybrid onsite/offshore delivery model, which means that a portion of the software development work and IT support is conducted from overseas locations. This is acceptable, provided that CMS data and consumer PII reside in the United States. Multiple domains tied to the Speridian Companies, however, are based in India, where they operate a large, dedicated data center, and CMS reasonably believes that CMS data, including consumer PII, is processed and/or stored in this location. The company has subsidiaries and operations in Canada, India, Pakistan, Saudi Arabia, Singapore, and the UAE. There may be other locations and subsidiaries that CMS has not yet discovered.

Further, the Speridian Companies, BenefitAlign and True Coverage dba Inshura, are defendants in a pending lawsuit, filed by private parties in 2024, alleging that they engaged in a variety of illegal practices, including violations of the RICO Act, misuse of consumer PII, and insurance fraud that they allegedly carried out by misusing BenefitAlign's access to the Marketplace. Plaintiffs in the lawsuit likewise claim that BenefitAlign allows access to the Exchange from abroad and houses CMS data overseas.

CMS suspended the Speridian Companies' ability to transact information with the Marketplace on August 8, 2024, after a CMS analysis identified a serious lapse in the security posture of the Speridian Companies' platforms; namely, that the Speridian Companies' platforms could be accessed by non-CMS-approved systems outside of the United States. Under CMS's requirements, Marketplace data must always reside in the United States to eliminate the possibility that foreign powers might obtain access to CMS data and information.[8] In addition, the EDE agreement states that EDE entities or their delegated entities, including employees and contracted agents, "cannot remotely connect or transmit data to the FFE, SBE-FP or its testing environments, nor remotely connect or transmit data to EDE Entity's systems that maintain connections to the FFE, SBE-FP or its testing environments, from locations outside of the United States of America.... This includes any such connection through virtual private networks (VPNs)." [9]

On August 13, 2024, OIT met with the Speridian Companies to discuss CMS's concerns about Marketplace data being accessed or accessible from outside the continental United States (OCONUS). During these meetings and afterward, CMS requested information relevant to its

---

[7] EDE Agreement at section X.n.
[8] "CMS system owners must ensure that CMS data is not processed, transmitted, transferred, or stored outside the United States and its territories." *BR-SAAS-8*, CMS.gov. (n.d.). https://www.cms.gov/tra/Infrastructure_Services/IS_0250_SaaS_Business_Rules.htm.
[9] EDE Agreement, Section X.n.

concerns, including information regarding who could access the platforms and from what geographic locations. CMS sent an initial data request to the Speridian Companies on August 13, 2024, the first of seven requests for data. The Speridian Companies' responses each time either led to more questions or were incomplete, with the August 16, 2024 response omitting some of the requested VPN access logs altogether.

CMS reviewed the data the Speridian Companies provided between August 19 and 28, 2024. CMS identified several issues of continued concern, including concerns that there appeared to be VPN usage which could indicate a party's intent to hide the fact that its systems could be accessed from outside the United States. The review also identified additional concerns regarding connections to internet protocol (IP) addresses in India and Pakistan. The review also revealed that all IP addresses associated with the Speridian Companies indicated that their primary IT infrastructure was operated in India.

By August 28, 2024, CMS made a number of concerning discoveries, including that multiple users logging onto the Speridian Companies' systems with company-provided credentials had been identified as connecting to IP addresses that were geolocated to India. Similarly, multiple users had been recorded as sending traffic to multiple IP addresses that corresponded to resources geolocated overseas, including in Hong Kong, India, Ireland, Japan, Pakistan, and Sweden. CMS requested further information from the Speridian Companies regarding this activity on August 28, 2024, and has yet to receive a response.

Due to these critical concerns, as well as an absence of requested information that the Speridian Companies have failed to provide to CMS, CMS has determined that continuing the August 8, 2024 suspension of the Speridian Companies is necessary and appropriate. Thus far, the data and information provided do not allay CMS suspicions that Marketplace data, including consumer PII, was transferred outside the United States, or that EDE and/or FFM systems are being accessed from outside of the United States.

**Notice of Intent to Conduct a Compliance Review and Audit**

Pursuant to CMS's authorities at 45 C.F.R. § 155.220(c)(5) and as specified in the CMS Agreements[10], CMS intends to conduct a compliance review and audit ("Audit") of the Speridian Companies.

On April 12, 2024, private parties filed a civil action in U.S. District Court, *Turner v. Enhance Health, LLC*, Case No.:24-cv-60591 (S.D. Fla.) on behalf of a class of consumers and a class of agents. The pleadings in that case, including the complaint, a motion for expedited discovery, and witness declarations submitted under penalty of perjury, allege that the Speridian Companies committed various acts (described below) that, if true, would constitute noncompliance with the web-broker and DE/EDE program regulations and CMS Agreements,

CMS has a reasonable suspicion, based on credible evidence it has considered, that the Speridian Companies directed its employees and other agents to change Marketplace enrollees' coverage

---

[10] section X.m. of the EDE Agreement, section X.l. of the Web-Broker Agreement, and section 15 of the executed Interconnection Security Agreement

and enroll insured and uninsured consumers without the enrollees' consent; design, publish, and/or clear misleading advertisements; and utilize agents' and brokers' national producer numbers without the agents' or brokers' consent. These circumstances pose unacceptable risk to the accuracy of the Marketplace's eligibility determinations, Marketplace operations, and Marketplace IT systems. These allegations are independent from, but in addition to, the other IT issues mentioned above, in particular the allegations of unauthorized transmission of consumer PII overseas. Any of these allegations, if true, would constitute noncompliance with the web-broker and DE/EDE program regulations and CMS Agreements.

This Audit would build upon the review CMS initiated on August 6, 2024, and would address issues that may or may not have been evaluated or relevant to the OIT reviewPursuant to the CMS Agreements, the Speridian Companies are expected to provide reasonable access to their information, employees, and facilities during the course of the Audit.[11] The Speridian Companies are also responsible for ensuring cooperation with the Audit by its downstream and delegated entities, including subcontractors.[12]

The Audit will cover the Speridian Companies' activities beginning on or after October 10, 2020 to the present. The Audit's scope will include, but will not be limited to, a review of the Speridian Companies' business relationships with agents and brokers who are not agents or brokers for a Speridian Company, a review of any call scripts used by Speridian Companies' agents, records of commission payments, IT records and practices, business processes and records, relationships with current and former business partners, and any related issues to these topics that may arise as part of the review of the Speridian Companies' compliance with applicable federal regulations and the CMS Agreements. CMS will follow up with additional information on when the Audit will begin and who will conduct it.

Given the serious risk to the Marketplace and consumers and other circumstances underlying CMS's suspicions, these suspensions will remain in effect until CMS completes its investigation and is satisfied that the issues described in this notice have been remedied or sufficiently mitigated as authorized by 45 C.F.R. §§ 155.220(c)(4)(ii) and 155.221(e). During this suspension and audit period, the Speridian Companies may not offer its non-Marketplace website for use by agents or brokers assisting consumers with Marketplace applications for, and enrollments in, insurance affordability programs or to enroll consumers in a QHP offered through any FFM, FF-Small Business Health Options Program (SHOP), SBM-FP, or SBM-FP-SHOP. Similarly, the Speridian Companies, and any of their upstream DE partners will be unable to transact information with Marketplace systems through Speridian Companies' DE/EDE platforms during this suspension and audit period.

**CMS System Access Can Only Be Restored Once Concerns are Resolved**

As explained above, pursuant to its obligations to protect the privacy and security of consumer information and CMS IT systems, CMS will not lift the suspensions and restore the Speridian Companies' ability to transact information with the Marketplaces or its ability to make its non-

---

[11] EDE Agreement at section X.m.; Web-Broker Agreement at section X.l.; ISA at section 15.
[12] EDE Agreement, section X.m. Web-Broker Agreement at section X.l.; ISA at section 15. "A QHP issuer direct enrollment technology provider that provides technology services or provides access to an information technology platform to a QHP issuer will be a downstream or delegated entity of the QHP issuer that participates or applies to participate as a direct enrollment entity." 45 C.F.R. § 155.20.

Marketplace website available until the security issues described above have been remedied or sufficiently mitigated to CMS's satisfaction. Further, during this temporary suspension and audit period, the Speridian Companies may not offer its non-Marketplace website for use by agents or brokers assisting consumers with Marketplace applications for, and enrollments in, insurance affordability programs or to enroll consumers in a QHP offered through any FFM, FF-Small Business Health Options Program (SHOP), SBM-FP, or SBM-FP-SHOP. Similarly, Speridian Companies, and any of their upstream DE partners will be unable to transact information with Marketplace systems through Speridian Companies' DE/EDE platforms during this suspension and audit period.

**Personally Identifiable Information (PII) Protection and Record Retention Requirements**

This suspension does not alter the Speridian Companies' legal obligation to protect and maintain the privacy and security of PII collected in connection with Marketplace applications and enrollments; that obligation remains in full force and effect until such PII is destroyed at the end of the required record retention period. Refer to 45 C.F.R. § 155.260(b) and your CMS Agreements for more information on the obligation to protect the privacy and security of, as well as the accompanying record retention requirements for, PII to which the Speridian Companies gained access to, collected, used, or disclosed in the course of facilitating enrollments through the FFMs, FF-SHOPs, SBM-FPs, and SBM-FP-SHOPs during the term of your CMS Agreements.

Please respond to directenrollment@cms.hhs.gov if you have any questions or would like to discuss this issue further.

Sincerely,


Jeffrey Grant
Deputy Director for Operations
Centers for Medicare & Medicaid Services
Center for Consumer Information and Insurance Oversight

cc: Speridian Global Holdings LLC