UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CONSWALLO TURNER, TIESHA FOREMAN, ANGELINA WELLS, PAULA LANGLEY, VERONICA KING, NAVAQUOTE, LLC and WINN INSURANCE AGENCY, LLC, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>ENHANCE HEALTH, LLC, TRUECOVERAGE, LLC, SPERIDIAN TECHNOLOGIES, LLC, BENEFITALIGN, LLC, NUMBER ONE PROSPECTING, LLC d/b/a MINERVA MARKETING, BAIN CAPITAL INSURANCE FUND L.P., DIGITAL MEDIA SOLUTIONS LLC, NET HEALTH AFFILIATES, INC., MATTHEW B. HERMAN, BRANDON BOWSKY, GIRISH PANICKER, and MATTHEW GOLDFUSS.<br><br>      Defendants. | Case No.: 0:24-cv-60591-MD |

**DEFENDANTS' JOINT REPLY IN SUPPORT OF THEIR
<u>MOTION TO STAY DISCOVERY</u>**

Defendants[1] jointly file their Reply in Support of their Expedited Joint Motion to Stay Discovery Pending Ruling on Defendants' Motion to Dismiss and respectfully request this Court, upon review of the Motion, Response, this Reply, and a preliminary peek at the Motion to Dismiss, stay discovery pending resolution of Defendants' dispositive motion to dismiss.

## INTRODUCTION

A discovery stay is appropriate pending resolution of Defendants' Motion to Dismiss. In arguing otherwise, Plaintiffs mischaracterize both Defendants' Motion to Dismiss and the law governing discovery stays. A "preliminary peek" at Defendants' Motion to Dismiss reveals six independent bases for dismissal, including standing and failure to satisfy the heightened Rule 9(b) pleading standard in fraud cases. *Lewis v. Mercedes-Benz USA, LLC*, No. 19-CIV-81220-RAR, 2020 WL 4923640, at *2 (S.D. Fla. Mar. 25, 2020). These deficiencies do not appear readily curable, but even if this Court gives the Plaintiffs the opportunity to try, courts in this Circuit regularly grant discovery stays in complex multi-defendant cases where even a partial dismissal would drastically alter the scope of discovery. Moreover, good cause exists to stay discovery because Defendants would suffer significant prejudice if forced to divert time and resources to collecting and reviewing terabytes of data while the scope of Plaintiffs' claims remains undecided. In contrast, Plaintiffs' claimed prejudice is unavailing: Defendants have issued discovery preservation letters, and Plaintiffs fail to explain why this is insufficient.

---

[1] Enhance Health, LLC, Matthew B. Herman, TrueCoverage, LLC, Speridian Technologies, LLC, Number One Prospecting, LLC d/b/a Minerva Marketing, Brandon Bowsky.

## ARGUMENT

I.  **DEFENDANTS' MOTION TO DISMISS IS CASE-DISPOSITIVE**

Defendants' Motion to Dismiss presents multiple case-dispositive arguments that should properly be considered prior to the start of discovery. However, even if this Court is inclined to allow Plaintiffs to replead their allegations, a stay of discovery is nevertheless appropriate until the actual parameters of the case (if any) that will proceed have been established. Defendants have identified significant pleading defects, including under Rule 9(b), that are unlikely to be remedied on amendment. Indeed, the "very purpose" of Rule 9(b) is to protect defendants from discovery where fraud claims have been inadequately pleaded. *United States ex rel. Mastej v. Health Management Associates*, 869 F. Supp. 2d 1336, 1350 (M.D. Fla. 2012) (citing *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985)). This Court should therefore stay discovery until it determines the scope of the case by ruling on the Motion to Dismiss.

   A.  Defendants' Motion to Dismiss raises multiple case-dispositive issues

No Plaintiff has demonstrated the causal connections necessary to state claims for relief. As stated in the Motion to Dismiss:

> No individual Plaintiff alleges that she saw an ad generated by Minerva that promised a cash card, called Enhance or TrueCoverage, gave her PII to the sales agent, and subsequently had her health insurance altered in a way that caused monetary damages—all of which is required to state a valid claim.

[ECF No. 100 ("MTD") at 2.] This means that as a functional matter, the Plaintiffs lack Article III standing because they cannot trace their injuries to improper conduct by the Defendants: Plaintiffs have not alleged that their injuries occurred "by reason of" Defendants' conduct, and fail to allege any connection with Defendants that could plausibly lead to their injuries. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) (explaining Article III requires a "remotely plausible causal chain"). That is fatal to their claims.

2

Both the Eleventh Circuit and this court have recognized the similarities between Article III standing and RICO standing.  For example, in *Schalamar Creek Mobile Homeowner's Ass'n, Inc. v. Adler*, the Eleventh Circuit affirmed a grant of summary judgment for both lack of Article III and RICO standing because the plaintiffs could not establish a causal chain between the alleged scheme and their injuries.  855 Fed. Appx. 546, 551 (11th Cir. 2021).  In so doing, the Court recognized that RICO standing's causation requirement may be more stringent than the constitutional one, but that the flaw was ultimately the same.  *Id.*  Similarly, in *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*, the court dismissed a complaint for lack of RICO standing, specifically explaining that the plaintiffs' failure to "specify how independent actors, like physicians, played into the[ alleged] injuries, how Defendant Smiths' actions influenced these economic injuries, or how UT and CVC's 'enterprise' proximately injured Assignors" implicated Article III principles and may have satisfied traceability, but could not satisfy RICO standing. *MSP Recovery Claims, Series LLC v. Caring Voice Coal., Inc.*, No. 21-cv-21317, 2022 WL 3155035, at *11 (S.D. Fla. July 21, 2022), *report and recommendation adopted*, 2022 WL 4448256 (S.D. Fla. Sept. 23, 2022).  These overlapping legal principles make it clear that a well-pleaded causal chain is required to survive a motion to dismiss, and Plaintiffs have not offered one.

Moreover, Defendant's Motion to Dismiss raises five other case-dispositive issues.  First, Plaintiffs fail to allege that Defendants sought to obtain property, as necessary to assert the predicate act of wire fraud.  MTD at 36-37.  Instead, Plaintiffs allege that Defendants sought the Consumer Plaintiffs' PII, which is not "property" within the meaning of the wire fraud statute.  *Id.*  Second, no Plaintiff established RICO standing because no Plaintiff has alleged an injury to business or property by reason of the predicate acts.  *Id*. at 12-25.  Those two flaws alone warrant dismissal of all RICO claims (including conspiracy and aiding and abetting). Third, Plaintiffs

3

Langley and Foreman lack prudential standing to pursue their common law claims because the alleged fraudulent statements were made to their husbands. *Id.* at 45-47. Fourth, Plaintiffs cannot assert claims of aiding and abetting a breach of a fiduciary duty because they have failed to identify any fiduciary duty that they were owed. *Id*. at 49-53. Fifth, Plaintiffs have failed to identify any legal duty owed by any Defendant sufficient to support a negligence claim. *Id*. at 55-59. Taken together, these arguments would dismiss all claims.[2]

B.  Incurable pleading defects support a stay

Plaintiffs' Amended Complaint also fails to meet the basic standards of Federal Rule of Civil Procedure 8, as well as the heightened pleading standard for RICO claims under Rule 9(b). *See id*. at 33-39. Those defects are numerous and incurable, and are independently sufficient to both dispose of this case in its entirety and support a stay of discovery in the interim.

While Plaintiffs assert in conclusory fashion that any pleading deficiencies could be cured, that is plainly incorrect. Far from simply omitting certain information that Rule 9(b) requires (such as who allegedly made a misrepresentation), the Amended Complaint fails to allege basic facts needed to make out any fraud claim; facts that Plaintiffs would surely have included in their Complaint if they had them readily available. No Plaintiff alleges a single misrepresentation made to them with the required specificity, and only one Plaintiff alleges that any misrepresentation was made to her at all. *See* MTD at 6-8, 17-25.

The defects in Plaintiffs' complaints are strikingly similar to those that the court confronted in *Boger v. Jaffe* when it stayed discovery. No. 2:19-cv-275, 2024 WL 3952283, at *2

---

[2] Plaintiffs appear to argue that their Complaint directs aiding and abetting breach of fiduciary duty, aiding and abetting fraud, and negligence claims on behalf of all seven named Plaintiffs. Opp. at 1, n.2. However, the shotgun nature of Plaintiffs' pleading makes it near impossible to divine at first glance which Plaintiffs assert which claims. MTD at 10, 54. Further, as a matter of substance, this cannot be correct because the Agent Plaintiffs are not implicated by any of these claims due to their status as agents, not consumers.

4

(M.D. Fla. Aug. 26, 2024). Although *Boger* involved claims arising under the False Claims Act, it is similar to the instant matter because Boger, like these Plaintiffs, had done little more than "describe a . . . scheme in detail" and then alleged "simply and without any stated reason" that the defendants had engaged in that scheme. *Id.* (citation omitted). However, as the Eleventh Circuit held in *United States ex rel. Clausen v. Lab'y Corp. of America*, on which *Boger* relied, "if Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of an *actual false claim* for payment being made to the Government." 290 F.3d 1301, 1311 (11th Cir. 2002); *United States ex rel. Butler v. Magellan Health Servs.*, 101 F. Supp. 2d 1365, 1369 (M.D. Fla. 2000) ("Plaintiff does plead a fraudulent scheme of conduct which may well be prohibited by law. However, Plaintiff pleads no specific occurrences of a false claim."). As in *Boger*, Plaintiffs go on at length about claimed illegal practices in the Defendants' industry, but identify no meaningful example of any conduct directed *toward them* sufficient to sustain a claim for recovery. *See* MTD at 6-8, 17-25. As in *Boger*, the Plaintiffs here do not make the necessary showing in their Amended Complaint, therefore a stay is warranted.

Further, Plaintiffs' assertions that the many defects in their pleadings are curable ignore the context in which the present motion arises. Plaintiffs have already availed themselves of one opportunity to cure the defects in their initial complaint. More specifically, Plaintiffs requested—and Defendants consented to—nearly five months' time to amend their complaint. Despite that opportunity, Plaintiffs failed to remedy obvious defects. In fact, Plaintiffs only exacerbated the shotgun nature of their pleading, doing little more than adding paragraph after paragraph of irrelevant allegations that do not bear any relevance to the actual named Plaintiffs' claimed entitlement to relief. *See* MTD at 10. Plaintiffs' inability to remedy the fundamental defects in their Complaint despite having months to do so indicates that those defects are simply incurable.

5

C. The likelihood that Plaintiffs' claims will be narrowed supports a stay

Contrary to Plaintiffs' assertions, courts in this Circuit routinely grant stays of discovery in complex cases such as this one when there is a pending motion to dismiss, where doing so would "save the court, counsel, and the parties significant time and effort" by avoiding unnecessary discovery into claims that lack merit—even if other claims were to survive. *Lewis v. Mercedes-Benz USA*, No. 19-CIV-81220-RAR, 2020 WL 4923640, at *3 (S.D. Fla. Mar. 25, 2020).

The case law is replete with examples of courts staying discovery in complex cases even where there remained a possibility that some claims would proceed. For example, in *Taylor v. Service Corporation International*, the Court relied not only on the Article III standing issues presented in the at-issue Motion to Dismiss, but also on "the legal deficiencies asserted in Defendants' Motion to Dismiss" because "[a]ddressing these types of facial challenges before permitting discovery lessens unnecessary costs, 'particularly given the expansive nature of Plaintiffs' discovery requests. . . .'" No. 20-cv-60709, 2020 WL 6118779, at *4 (S.D. Fla. Oct. 16, 2020) (citation omitted).[3] Similarly, in *Skuraskis v. NationsBenefits Holdings, LLC* a case that Plaintiffs barely acknowledge, the Court identified "potentially fatal pleading deficiencies" raised in the present Motion to Dismiss as supporting a stay because "even if the Motion to Dismiss were [only] granted in part, such a grant would substantially impact the viability of claims against one or more Defendants and drastically alter the scope of discovery." __ F. Supp. 3d __, 2023 WL 8698324, at *5 (S.D. Fla. Dec. 15, 2023); *Faller v. Beasley Broad. Grp., Inc.*, No. 24-cv-606, 2024 WL 4149855, at *1 (M.D. Fla. Sept. 11, 2024) (same); *Lewis*, 2020 WL 4923640, at *2 (same);

---

[3] In fact, the motion to dismiss at issue in *Taylor* was ultimately granted with leave to replead. No. 20-CIV-60709-RAR, 2021 WL 6742504, at *3 (S.D. Fla. Mar. 31, 2021). The Court then ultimately rejected the standing challenges raised in the subsequent motion and permitted the case to proceed. No. 20-CV-60709-RAR, 2021 WL 5050175, at *4, 9 (S.D. Fla. Nov. 1, 2021).

6

*Jackson v. JPay Corp.*, No. 19-cv-20341, 2019 WL 11505294, at *1-2 (S.D. Fla. Oct. 22, 2019), *report and recommendation adopted*, 2020 WL 7480656 (S.D. Fla. Jan. 27, 2020) (staying discovery pending a motion to dismiss until the "breadth of the case is confirmed"). *Riley v. Rutherford*, No. 10-cv-644, 2010 WL 4054140, at *1 (M.D. Fla. Oct. 15, 2010) (same). Additionally, as discussed, in *Boger*, the court granted the defendants' motion to stay discovery because the sheer complexity of the case combined with questions about whether plaintiffs "satisfied Rule 9(b)'s requirement for fraud" "suggest[ed] that there [was] a real possibility that, at the very least, a significant portion of the claims may be dismissed—which will further narrow the scope of discovery." 2024 WL 3952283, at *1-2. The same is true here.

Plaintiffs, representing a putative class, have pleaded 55 claims against 12 defendants. Those claims involve far-reaching—and unsupported—allegations of a conspiracy to defraud the public. Defendants have raised multiple, independently sufficient bases to dismiss those claims in their entirety. Even if this Court were to permit Plaintiffs to replead some claims or otherwise allow others to proceed, the parties should not be required to engage in burdensome, expensive discovery until the scope of Plaintiffs' complex allegations have been conclusively determined.

**II.     GOOD CAUSE EXISTS TO GRANT A BRIEF STAY OF DISCOVERY**

Defendants have shown good cause to stay discovery. It is apparent from the face of the Amended Complaint that discovery will be far-reaching and time consuming, and the initial discovery sought to date only reinforces this truism. MTD at 9-10. Defendants have raised valid concerns about the extent of discovery, its impact on business operations, *id.*, and cited specific support to show that stays are commonly granted in similar circumstances. In light of those specific and justified concerns, Plaintiffs' response lacks merit.

7

Plaintiffs ignore the specific concerns that Defendants raise in their Motion. Responding to Plaintiffs' initial discovery requests as worded would require Defendant Enhance alone to task at least 20 employees to sift through over 10 terabytes of data across multiple databases. MTD at 10-11; Ex. A (Bustos Decl.).[4] These employees would have coordinate extraction of data from over 2,000 personal cellphones and laptops of former and current employees. Ex. A ¶ 6. Further, if Plaintiffs seek customer information, which is inevitable given the nature of their allegations, Enhance Health would need to collect, extract, review, and analyze approximately 2.6 million recorded consumer calls and records from 1.8 million members, saved in four different databases. *Id.* ¶ 7. Staying discovery until the actual parameters of the case have been established (if ever) will prevent this effort from being wasted on claims that do not survive the Motion to Dismiss.

Moreover, an ESI protocol will not obviate Defendants' discovery obligations. Regardless of the contours of an ESI protocol, Defendants will be required to collect and review terabytes of data in order to comply with their discovery obligations. *Id.* Likewise, a confidentiality order will not affect the burden of collecting, reviewing, and documenting confidential information as part of the production process. [ECF No. 105 "Opp." at 12.]

While it is of course true that Defendants may always seek judicial relief from overbroad discovery demands, *id.*, (and indeed they already have, ECF Nos. 46, 81) waiting to commence the discovery process until after the Court has established the parameters of the action that will

---

[4] Defendants submit the Declaration of Alida J. Bustos from Enhance Health in response to Plaintiffs' argument that they have failed to substantiate the burden of responding to Plaintiffs' broad discovery requests. Opp. at 11. Parties may properly submit reply evidence through declarations or affidavit "as long as the facts rebut elements of the opposition memorandum and do not raise wholly new factual issues." *Fox v. Ritz-Carlton Hotel Co.*, No. 17-cv-24284, 2022 WL 2717986 at *4, 6 (S.D. Fla. Jul. 12, 2022) (Damian, M.J.), *aff'd*, No. 17-24284-CIV, 2022 WL 19406583 (S.D. Fla. Sept. 26, 2022) (denying motion to strike declaration submitted only with reply in support of class certification) (collecting cases); *Giglio Sub s.n.c. v. Carnival Corp.*, No. 12-cv-21680, 2012 WL 4477504, at *2 (S.D. Fla. Sept. 26, 2012) (Rosenbaum, J.), *aff'd*, 523 Fed. App'x. 651 (11th Cir. 2013) (citing *Burger King Corp. v. Ashland Equities, Inc.*, 217 F. Supp. 2d 1266, 1280-81 (S.D. Fla. 2002)) (Gold, J.).

actually proceed before it may mean that the parties and the Court never face these issues (or at minimum, face a narrowed version of them). These concerns are reflected in each of the orders Defendants cite in their Motion. Simply put, "it is in everyone's best interest to eliminate potentially non-meritorious claims before discovery begins." *Toliver v. Bank of Am., N.A.*, No. 12-cv-1006, 2013 WL 12161877, at *1-2 (M.D. Fla. Aug. 19, 2013) (granting a motion to stay discovery in an action alleging RICO, fraud, and conspiracy because the defendant "raised potentially meritorious challenges to the legal sufficiency of the complaint."). For the reasons explained in Defendant's Motion, the same result is warranted here. MTD. at 8-9.

### III. PLAINTIFFS FACE NO PREJUDICE FROM A STAY

Plaintiffs claim that a discovery stay will cause an unfair "hold up" in their ability to prosecute the case, Opp. at 13—though of course, they omit that their more than four-month delay in filing an amended complaint is what caused the actual initial delay.

Plaintiffs repeat their previously stated concerns about spoliation, Opp. at 13-14, but Defendants have all instituted litigation holds and specifically instructed that relevant documents must be preserved. Ex. A ¶ 8; ECF No. 36-1 ¶ 4. Specifically, Plaintiffs make conclusory claims that TrueCoverage "destroyed and/or altered evidence" after Plaintiffs filed their original complaint. Opp. at 13. To support this claim, Plaintiffs revive arguments from their withdrawn June 26, 2024, Motion for Expedited Discovery. ECF Nos. 27, 57. The arguments are no more persuasive this time around because Plaintiffs are still unable to identify any specific document or other information that was allegedly destroyed. *See* ECF. No. 36 at 4. Moreover, TrueCoverage has maintained a legal hold since November 10, 2023—well before Plaintiffs filed their initial complaint. *See id.* at 3-4 & ECF No. 36-1 ¶ 4. Plaintiffs have not stated a basis to conclude that

9

Defendants' preservation measures are inadequate, and therefore their concerns are not well-founded.[5]

Further, there is no imminent need for discovery at this time, as it is not necessary for disposition of the motion to dismiss. *See, e.g.*, *Oriental Republic of Uru. v. Italba Corp.*, No. 21-cv-24264, 2022 U.S. Dist. LEXIS 68563, at *3-4 (S.D. Fla. Apr. 13, 2022) (Damian, M.J.) (staying discovery where "disclosures and discovery" were "not . . . necessary to the determination" of pending "motion for judgment as a matter of law"). A brief stay will not deprive Plaintiffs of sufficient time to conduct discovery: this case is not yet set for trial, and Plaintiffs themselves have proposed a one-year time frame from entry of the case management order, which has not yet been entered, to complete discovery, ECF No. 72 at 3, and Defendants have submitted that even more time is warranted. Under these circumstances, a brief discovery stay will not unduly prejudice Plaintiffs. *See Lewis*, 2020 WL 4923640, at *4 (noting "Plaintiffs have not identified any undue prejudice resulting from a temporary stay" when a trial date was not set, nor was the motion to dismiss ripe).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant Defendants' motion to stay discovery pending a decision on Defendants' dispositive motion to dismiss.

---

[5] Plaintiffs also point to a dispute between TrueCoverage and Centers for Medicare and Medicaid Services ("CMS") that has no nexus to a destruction-of-evidence claim. As Plaintiffs acknowledge, however, this dispute arose from CMS's allegations that employees of TrueCoverage affiliates could access platforms that connect to CMS systems from outside the United States. *See* Opp. at Ex. 1 n. 8. Even assuming this is true—which it is not—Plaintiffs do not explain how the geographic location of a TrueCoverage affiliate's employees has any bearing on the preservation of evidence in this litigation. Indeed, it does not. These concerns are therefore unfounded, and do not establish prejudice.

Dated: October 11, 2024

By: /s/ *Olga M. Vieira*

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Samuel G. Williamson (FBN: 1033817)
Olga M. Vieira (FBN: 29783)
Laura N. Ferguson (FBN: 1047701)
2601 South Bayshore Dr., Suite 1550
Miami, FL 33133
Telephone: (305) 496-2988
samwilliamson@quinnemanuel.com
olgavieira@quinnemanuel.com
lauraferguson@quinnemanuel.com

*Attorneys for Enhance Health LLC, and Matthew B. Herman*

Respectfully submitted,

By: /s/ *Ryan A. Lehrer*

TRIPP SCOTT, P.A.
110 S.E. 6th Street, 15th Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 525-7500

RYAN H. LEHRER, ESQ. (FBN: 0084423)
(rhl@trippscott.com; sxc@trippscott.com; cab@trippscott.com; eservice@trippscott.com)
SETH J. DONAHOE, ESQ. (FBN: 1004133)
(sjd@trippscott.com; sgc@trippscott.com)
JENNIFER H. WAHBA, ESQ. (FBN: 1010093)
(jmh@trippscott.com; jam@trippscott.com)

*Attorneys for Defendants Number One Prospecting, LLC d/b/a Minerva Marketing, and Brandon Bowsky*

By: */s/ Guy A. Rasco*

DEVINE GOODMAN & RASCO, LLP

Guy A. Rasco, Esq. (F.B.N.: 727520)
2800 Ponce de Leon Blvd., Suite 1400
Coral Gables, FL 33134
Tel.: 305-374-8200
grasco@devinegoodman.com

And of Counsel (*admitted pro hac vice*)
Amy E. Richardson, Esq.
HWG, LLP
333 Fayetteville Street, Suite 1500
Raleigh, NC 27601

Patrick P. O'Donnell, Esq.
Walter E. Anderson, Esq.
HWG, LLP
1919 M. Street N.W., Suite 800
Washington, D.C. 20036

*Attorneys for Defendants TrueCoverage, LLC, Benefitalign, LLC, Speridian Technologies, LLC, Girish Panicker, and Matthew Goldfuss*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed by CM/ECF on October 11, 2024.

By: /s/  *Olga M. Vieira*
Olga M. Vieira (FBN: 29783)