UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-cv-60591-DAMIAN/Valle

CONSWALLO TURNER, TIESHA
FOREMAN, ANGELINA WELLS,
PAULA LANGLEY, VERONICA          **CLASS ACTION**
KING, NAVAQUOTE, LLC
and WINN INSURANCE AGENCY, LLC,
individually and on behalf of all others
similarly situated,              (Jury Trial Demanded)

        Plaintiffs,

v.

ENHANCE HEALTH, LLC,
TRUECOVERAGE, LLC,
SPERIDIAN TECHNOLOGIES, LLC,
BENEFITALIGN, LLC,
NUMBER ONE PROSPECTING, LLC
d/b/a MINERVA MARKETING,
BAIN CAPITAL INSURANCE FUND L.P.,
DIGITAL MEDIA SOLUTIONS LLC,
NET HEALTH AFFILIATES, INC.,
MATTHEW B. HERMAN,
BRANDON BOWSKY, GIRISH PANICKER,
and MATTHEW GOLDFUSS,

        Defendants.
_____/

**RESPONSE TO BAIN CAPITAL INSURANCE FUND GENERAL PARTNER, LLC AND BAIN CAPITAL DISTRIBUTORS, LLC'S MOTION TO QUASH NON-PARTY SUBPOENAS, OR, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER**

CASE NO. 0:24-cv-60591-DAMIAN/Valle

Plaintiffs respond to the Motion to Quash Non-Party Subpoenas, Or, Alternatively, Motion For Protective Order [D.E. 110] (the "Motion") filed by Non-Parties Bain Capital Insurance Fund General Partner, LLC ("Bain G.P."), and Bain Capital Distributors, LLC ("Bain Distributors"), (collectively, the "Bain Nonparties").

## **INTRODUCTION**

Plaintiffs' subpoenas seek documents relevant for a number of reasons. The Bain-related defendant in this case, Bain Capital Insurance Fund L.P. (the "Fund" or "Bain Insurance"), is an investment fund that invested $150 million in Defendant Enhance Health. Bain G.P. manages that Fund. Bain Distributors sells investments in the Fund. As part of the typical sales process for such funds, Bain G.P. and Bain Distributors almost surely performed due diligence of the Fund and/or its investments, including Enhance Health. That due diligence would have generated documentation, as well as a final risk analysis, to be included in the private placement memorandum provided to accredited investors. These documents — showing what Bain Insurance's manager and distributor knew and learned about Enhance Health over the course of Bain Insurance's investment in Enhance Health — are relevant to the issue of Bain Insurance's knowledge of Enhance Health's scheme and Bain Insurance's involvement in the alleged RICO Enterprise.

As set forth below, the Bain Nonparties fail to show a basis to quash the subpoenas or even assert that good cause exists to necessitate a protective order. The documents sought are neither confidential nor subject to any privilege. Confidentiality issues can be addressed through a confidentiality agreement. The documents contain relevant information going to the heart of Plaintiffs' claim that Enhance Health and Bain Insurance participated in the alleged RICO Enterprise.

CASE NO. 0:24-cv-60591-DAMIAN/Valle

## THE MOTION SHOULD BE DENIED

**A.    The Subpoenas Seek Relevant, Discoverable Information**

The Bain Nonparties fail to show that the subpoenas seek production of irrelevant information. Without this showing, there is not good cause to preclude this information's production, and this Court should deny the Motion.

As an initial matter, the Bain Nonparties "bear[] the burden of demonstrating [a protective order's] necessity." *Wilcox v. La Pensee Condo. Ass'n, Inc.*, 603 F. Supp. 3d 1291, 1293 (S.D. Fla. 2022). To meet this burden, the Bain Nonparties must show "good cause":

> "Good cause" has been defined as a "sound basis or legitimate need to take judicial action." The party requesting a protective order must make a specific demonstration of facts in support of the request. A court must then balance the competing factors involved in determining whether good cause has been shown.

*Arevalo v. Havana Harry's II Inc.*, 23-CV-20555, 2024 WL 3363090, at *2 (S.D. Fla. Mar. 4, 2024*), reconsideration denied*, 23-20555-CIV, 2024 WL 3363273 (S.D. Fla. Apr. 15, 2024) (internal quotations and citations omitted).

Here, the Bain Nonparties fail to meet that burden. First they argue that the relevance of the information sought "is completely absent from the pleadings." (Mot. at 3). Not so. The Amended Complaint alleges that the Fund "invest[ed] at least $150 million in Enhance Health" (and again, Bain G.P. manages the Fund and Bain Distributors sells investments in the Fund.) (Am. Compl., ¶ 48). Plaintiffs further allege that in connection with this investment, "Bain Insurance knew what was going on at Enhance Health, and ultimately supported it." (*Id*. ¶¶ 30, 298). The Amended Complaint details how the Fund controlled Enhance Health, how it installed an executive on Enhance Health's board of directors, how it chose Enhance Health's C-Suite executives, and how it permitted Enhance Health to pivot resources from its failing Medicare Advantage business to the ACA market after learning of the potential profits by using the

2

fraudulent ads ran by Defendants Bowsky and Minerva. (*Id*. ¶¶ 217, 298-301). Plaintiffs further allege that the Fund's end goal was "to sell Enhance Health within one or two years." (*Id*. ¶ 305).

This all links to the Bain Nonparties. As manager of the Fund, Bain G.P. would have performed due diligence on Enhance Health prior to the Fund making a $150 million investment. As distributor of the Fund, so would Bain Distributors. The subpoenas seek documents, among others, relating to the Bain Nonparties' and the Fund's due diligence on this investment – *i.e.*, what they knew about Enhance Health and its business to understand why they thought this investment would be a good one. Any analysis and results associated with the Bain Nonparties' due diligence, particularly any private placement memoranda, describing the risks involved in the Fund's investment in Enhance Health, is relevant to the Fund's knowledge of the risks of Enhance Health's business practices as described to accredited investors who invested in the Fund. The documents sought by the subpoenas are relevant to establishing that the Fund itself, or through its general partner and/or distributor *that conducted the due diligence on Enhance Health for the Fund's benefit*, learned about the cash cards and AOR swapping, and when it learned that information. The information goes directly to the actual knowledge element of the aiding and abetting claims and participation in the RICO enterprise.

Moreover, these audited and unaudited financial statements are also relevant to the extent they relate to Enhance Health generally. Plaintiffs allege that Enhance Health was doing poorly in the Medicare space, and generally, in 2022. (*Id*. ¶ 298-300). Then Defendant Matthew Herman discovered the fraudulent ACA enrollment model and took the company in that direction. (*Id*. ¶¶ 217, 300). Realizing the model's profitability, Bain Insurance allowed Enhance Health to make the pivot away from Medicare Advantage business and into the ACA

3

space, despite receiving information from one of Enhance Health's managers that this ACA model was generating high numbers of consumer complaints. (*Id.* ¶¶ 300-01). Bain Insurance did not stop the practices because it generated tremendous profits. (*Id.* ¶¶ 304-05). The financial aspects of this timeline, such as Enhance Health starting poorly and then doing tremendously after converting to ACA, and Enhance Health driving the profitability of Bain Insurance itself, are likely found in financial statements held by the Bain Nonparties that relate to Enhance Health.

Similarly, Enhance Health's poor performance in selling Medicare products from November 1, 2021 until it turned to the ACA space justifies the subpoenas' time period. Financial documents reflecting Enhance Health's dramatic turnaround as a result of its pivot from Medicare to ACA will show why it made this change and why it had a great incentive to keep participating in the RICO enterprise. (*Id.* ¶¶ 212-21). Indeed, in *Feingold v. Cardinale*, cited frequently by the Bain Nonparties, the Court did not modify the subpoena's three-year time period, which reflected the time period during which the subpoenaed party and Defendant maintained a business relationship. 22-CV-20375, 2023 WL 4763149, at *4 (S.D. Fla. Apr. 25, 2023). Here, the subpoenas are limited to a three-year time period, from November 1, 2021 – when Enhance Health and the Fund's business relationship began with its $150 million investment – to the present. As in *Feingold*, the subpoenas' time period is narrowly tailored and specifically tracks the Fund's and Enhance Health's business relationship as alleged in the Amended Complaint. There is not good cause to limit the subpoenas' temporal scope.

**B.    The Bain Nonparties Fail to Specifically Establish Confidentiality, Which in Any Even Can Be Addressed Through a Confidentiality Order**

The Bain Nonparties also argue that the subpoena may reveal confidential proprietary corporate records, and that their interest in shielding these records from discovery outweighs Plaintiffs' need for them.  But this conclusory assertion fails to "make a specific demonstration of facts" to support why a protective order is needed. *Arevalo v. Havana Harry's Ii Inc.*, 23-CV-20555, 2024 WL 3363090, at *2.  Indeed, the Bain Nonparties, as "[t]he party resisting discovery[,] must first establish that the information sought is confidential ***and its disclosure might cause harm***" to obtain a protective order.  *Hutchinson v. Pyros*, 2:24-CV-201-KCD, 2024 WL 4100736, at *3 (M.D. Fla. Aug. 9, 2024) (emphasis added).  *Hutchinson* is instructive, as the Court there denied a motion for a protective order where that motion failed to provide specific facts as to why certain documents were confidential or why their disclosure would be harmful:

> Defendants have not carried their initial burden.  Their arguments amount to little more than conclusory statements that the subpoenas seek confidential information.  There are no facts, much less specific facts, to establish that the information sought is actually confidential or its disclosure will prove harmful.  A blanket assertion of confidentiality for all documents related to Krystal Biotech, which is all Defendants offer here, is not enough to preclude the discovery.

*Id*.  The Motion here is similarly deficient.  The Bain Nonparties assert no facts, let alone specific ones, explaining why the documents are confidential, and fail to set forth that they would be harmed by these documents' disclosure.  Thus, the Bain Nonparties' fail to carry their burden in demonstrating the good cause required to protect the subpoenaed material from discovery.

Importantly, Plaintiffs have circulated a proposed confidentiality order to all the parties in the case, including Bain Insurance, who is represented by the same attorneys as the Bain Nonparties.  The Bain Nonparties are invited to join in a confidentiality order.  Accordingly,

even if the subpoenas seek "competitively sensitive" materials, this proposed order would require all documents be marked as "Attorney's Eyes Only" and that any records produced be kept confidential to protect the Bain Nonparties from any potential harm. Bain Insurance has yet to provide its comments to the proposed agreement, which Plaintiffs circulated on September 13, 2024. The Plaintiffs offering this confidentiality order weighs in favor of the production of any materials the Bain Nonparties consider sensitive or proprietary. *See CruiseCompete, LLC v. Smolinski & Associates, Inc.*, 9:12-MC-80796-KLR, 2012 WL 12888578, at *2 (S.D. Fla. Oct. 1, 2012), *report and recommendation adopted sub nom. Cruise Compete, LLC v. Smolinski & Associates, Inc.*, 12-80796-MC, 2013 WL 12131320 (S.D. Fla. Jan. 8, 2013) (denying motion for a protective order and explaining that "[e]ven if the information sought . . . constitutes a trade secret, the information would be adequately protected by a Protective Order"); *Cluck-U Chicken, Inc. v. Cluck-U, Corp.*, 8:15-CV-2274-T-MAP, 2017 WL 10275958, at *1 (M.D. Fla. Jan. 3, 2017) ("If Defendants are worried about keeping the documents confidential, a confidentiality agreement signed by the parties as well as the non-party franchisees – enforceable in court – would suffice.")

Similar to their failure to demonstrate the confidentiality of the subpoenaed documents and any harm that would result from their disclosure, the Bain Nonparties also fail to demonstrate how the subpoenas impose an undue burden or expense on them because "a party seeking to avoid discovery on a burdensomeness argument ***must substantiate that position with detailed affidavits or other evidence establishing an undue burden***." *Gen. Dynamics Elec. Boat Corp. v. Skobic*, 3:24-CV-387-WWB-MCR, 2024 WL 4188363, at *3 (M.D. Fla. Sept. 13, 2024) (emphasis added) (citing *Coker v. Duke & Co.*, 177 F.R.D. 682, 686 (M.D. Ala. 1998)); *see also Pataro v. Castellon*, 22-20866-CIV, 2023 WL 4014740, at *2 (S.D. Fla. May 11, 2023)

(denying a motion for protective order and explaining that "[c]laims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome.").

Here, the Bain Nonparties, without citing to any particular requests, baldly assert that responding to the subpoenas will be "onerous" because they will have to devote "significant resources" and time to produce the requested documents. (See Mot. at 9). This assertion, without more, simply does not cut it, as the Bain Nonparties fail to make "a sufficient showing as to why ***specific*** discovery requests are overly broad or unduly burdensome." *Id*. (emphasis in original). And any burden or expense imposed upon the Bain Nonparties does not outweigh the Plaintiffs' need for the subpoenaed documents; as explained above, these documents will likely be highly probative of what Bain Insurance knew regarding Enhance Health, the RICO enterprise, and when they knew these things.

Finally, the Motion argues that Plaintiffs should first seek information from named Defendants prior to seeking information from the Bain Nonparties. (*See* Mot. at 9-10). There's no requirement that Plaintiffs do so. *See*, *e.g.*, *Diez v. Am. Landmark Mgmt., LLC*, No. 1:22-CV-20189, 2022 WL 22839520, at *2 (S.D. Fla. Sept. 13, 2022) ("Rule 45 does not require Plaintiff to establish that she is wholly unable to obtain information from Defendant first before seeking information, whether by deposition or otherwise, from non-parties."). Under Rule 26(d)(3)(A) of the Federal Rules of Civil Procedure, "methods of discovery may be used in any sequence."

Accordingly, the Bain Nonparties' "you should ask them first" argument does not show any undue burden or expense to establish good cause for a protective order.

## **CONCLUSION**

For the reasons stated above, this Court should deny the Motion.

CASE NO. 0:24-cv-60591-DAMIAN/Valle

Dated: October 15, 2024

By: /s/ *Peter J. Sitaras*
Jason K. Kellogg, P.A.
Florida Bar No. 0578401
Primary email: jk@lklsg.com
Secondary email: ame@lklsg.com
Victoria J. Wilson
Florida Bar No. 92157
Primary email: vjw@lklsg.com
Secondary email: service@lklsg.com
Peter J. Sitaras
Florida Bar No. 1039141
Primary email: pjs@lklsg.com
Secondary email: acd@lklsg.com
100 Southeast Second Street
Miami Tower, 36th Floor
Miami, Florida 33131
Telephone: (305) 403-8788
Facsimile: (305) 403-8789

Respectfully submitted,

By: /s/ *Jason R. Doss*
Jason R. Doss
Florida Bar No. 0569496
Primary email: jasondoss@dossfirm.com
1827 Powers Ferry Road SE
Building 23, Suite 100
Atlanta, Georgia 30339
Telephone: (770) 578-1314
Facsimile: (770) 578-1302

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 15, 2024, a true and correct copy of the foregoing was filed via CM/ECF and served upon parties registered with CM/ECF in this case.

By: /s/ *Peter J. Sitaras*

8