## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CONSWALLO TURNER, TIESHA FOREMAN, ANGELINA WELLS, PAULA LANGLEY, VERONICA KING, NAVAQUOTE, LLC and WINN INSURANCE AGENCY, LLC, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>ENHANCE HEALTH, LLC, TRUECOVERAGE, LLC, SPERIDIAN TECHNOLOGIES, LLC, BENEFITALIGN, LLC, NUMBER ONE PROSPECTING, LLC d/b/a MINERVA MARKETING, BAIN CAPITAL INSURANCE FUND L.P., DIGITAL MEDIA SOLUTIONS LLC, NET HEALTH AFFILIATES, INC., MATTHEW B. HERMAN, BRANDON BOWSKY, GIRISH PANICKER, AND MATTHEW GOLDFUSS.<br><br>          Defendants. | Case No.: 0:24-cv-60591-MD |

## DEFENDANTS'[1] JOINT REPLY IN SUPPORT OF THEIR MOTION TO DISMISS

---

[1]     This Joint Reply is filed by Defendants Enhance Health, LLC ("Enhance"); TrueCoverage, LLC ("TrueCoverage"); Speridian Technologies, LLC ("Speridian"); Benefitalign LLC ("Benefitalign"); Girish Panicker; Matthew Goldfuss; Number One Prospecting, LLC d/b/a Minerva Marketing ("Minerva"); Net Health Affiliates, Inc. ("Net Health"); Matthew B. Herman; and Brandon Bowsky. Unless otherwise indicated, references to "Defendants" in this Reply refer to this set of Defendants.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................2

I.      PLAINTIFFS FAIL TO STATE A RICO CLAIM ...............................................2

      A.      Plaintiffs Do Not Have Statutory Standing..............................................3

            1.      No Plaintiff has alleged a concrete injury...................................3

            2.      No Plaintiff has alleged an injury that occurred "by reason of" the predicate acts..................................................................................4

      B.      Plaintiffs Do Not Plead An Enterprise....................................................6

      C.      Plaintiffs Do Not Plead A Pattern of Racketeering Activity ..................8

            1.      Plaintiffs do not allege that each Defendant engaged in a pattern of racketeering activity..........................................................................9

            2.      Plaintiffs do not allege any predicate acts with particularity......9

            3.      Plaintiffs fail to allege any scheme to obtain money or property .............12

II.      PLAINTIFFS FAIL TO STATE A RICO CONSPIRACY CLAIM ................................14

III.      PLAINTIFFS FAIL TO STATE AIDING AND ABETTING RICO CLAIMS ..............15

IV.      PLAINTIFFS FAIL TO STATE AIDING AND ABETTING FRAUD CLAIMS ..........16

V.      PLAINTIFFS FAIL TO STATE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIMS..............................................................................16

VI.      PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE..................................19

CONCLUSION..................................................................................................................20

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Almanza v. United Airlines, Inc.*,
    851 F.3d 1060 (11th Cir. 2017) ...................................................................6

*Am. Dental v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ..............................................................9, 15

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006).................................................................................4, 6

*Arencibia v. AGA Serv. Co.*,
    533 F. Supp. 3d 1180 (S.D. Fla. 2021) ..................................................8, 11

*Avirgan v. Hull*,
    116 F.R.D. 591 (S.D. Fla. 1987)................................................................9

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)...................................................................................15

*Chevron U.S.A., Inc. v. Forbes*,
    783 So. 2d 1215 (Fla. 4th DCA 2001) ......................................................19

*In re Chiquita Brands Int'l, Inc.*,
    284 F. Supp. 3d 1284 (S.D. Fla. 2018) ......................................................4

*Ciminelli v. United States*,
    598 U.S. 306 (2023)........................................................................12, 13, 14

*Cisneros v. Petland, Inc.*,
    341 F. Supp. 3d 1365 (N.D. Ga. 2018) ......................................................6

*Cisneros v. Petland, Inc.*,
    972 F.3d 1204 (11th Cir. 2020) ........................................................7, 9, 14

*Cleveland v. United States*,
    531 U.S. 12 (2000).....................................................................................12

*Codeventures, LLC v. Vital Motion Inc.*,
    No. 20-cv-21574, 2021 WL 1131531 (S.D. Fla. Mar. 24, 2021) .............18

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001).......................................................................15

ii

*Dorsey v. Reider*,
   139 So. 3d 860 (Fla. 2014)..................................................................................................20

*Feng v. Walsh*,
   No. 19-cv-24138, 2021 WL 8055449 (S.D. Fla. Dec. 21, 2021).............................................16

*Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*,
   341 F.3d 1292 (11th Cir. 2003) .............................................................................................5

*Grow Michigan, LLC v. LT Lender, LLC*,
   50 F.4th 587 (6th Cir. 2022) .................................................................................................3

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010).................................................................................................................4

*Jackson v. Bellsouth Telecommunications*,
   372 F.3d 1250 (11th Cir. 2004) ...........................................................................................14

*Johnson v. Badger Acquisition of Tampa LLC*,
   983 So. 2d 1175 (Fla. 2d DCA 2008) .............................................................................19, 20

*Johnson v. Catamaran Health Sols., LLC*,
   687 F. App'x 825 (11th Cir. 2017) ...................................................................................16, 17

*Kelly v. United States*,
   590 U.S. 391 (2020).............................................................................................................12

*Langford v. Rite Aid of Alabama, Inc.*,
   231 F.3d 1308 (11th Cir. 2000) ...........................................................................................11

*Leon v. Continental AG*,
   301 F. Supp. 3d 1203 (S.D. Fla. 2017) .................................................................................8

*Lerner v. Fleet Bank, N.A.*,
   318 F.3d 113 (2d Cir. 2003).................................................................................................3

*Lewis v. Mercedes-Benz USA, LLC*,
   530 F. Supp. 3d 1183 (S.D. Fla. 2021) .........................................................................6, 7, 8

*Maio v. Aetna, Inc.*,
   221 F.3d 472 (3d Cir. 2000).................................................................................................13

*In re Mendenhall's Estate*,
   6 Cal. Rptr. 45 (Cal. Dist. Ct. App. 1960) ...........................................................................13

*In re Minoco Grp. of Companies, Ltd.*,
   799 F.2d 517 (9th Cir. 1986) ...............................................................................................14

*Mitsubishi HC Cap. Am. v. Aerospace Asset Trading, LLC*,
    No. 22-cv-20074, 2024 WL 4120819 (S.D. Fla. Aug. 27, 2024) .......................................2, 11

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
    32 F.4th 1298 (11th Cir. 2022) ...............................................................................................6

*Pasquantino v. United States*,
    544 U.S. 349 (2005)................................................................................................................12

*Rolo v. City Investing Co. Liquidating Tr.*,
    155 F.3d 644 (3d Cir. 1998)...................................................................................................15

*Rosenberg v. Gould*,
    554 F.3d 962 (11th Cir. 2009) ................................................................................................2

*School Bd. of Osceola County, Fla. v. Gallagher Benefit Servs., Inc.*,
    No. 21-cv-1979, 2022 WL 19914514 (M.D. Fla. June 22, 2022) .........................................16

*Simpson v. Sanderson Farms*,
    744 F.3d 702 (11th Cir. 2014) ...........................................................................................3, 4

*In re Takata Airbag Prods. Liab. Litig.*,
    396 F. Supp. 3d 1101 (S.D. Fla. 2019) ..................................................................................3

*In re Takata Airbag Prods. Liab. Litig.*,
    No. 14-24009, 2015 WL 9987659 (S.D. Fla. Dec. 2, 2015)...................................................7

*United Food & Commercial Workers Unions & Employers Midwest Health
    Benefits Fund v. Walgreen Co.*,
    719 F.3d 849 (7th Cir. 2013) .................................................................................................6

*United States v. Abdelaziz*,
    68 F.4th 1 (1st Cir. 2023).......................................................................................................13

*United States v. Sadler*,
    750 F.3d 585 (6th Cir. 2014) ................................................................................................13

*United States v. Sullivan*,
    118 F.4th 170 (2d Cir. 2024) .................................................................................................12

*W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*,
    No. 03-cv-8606, 2004 WL 2187069 (S.D.N.Y. Sept. 29, 2004) .............................................2

*Watkins v. NCNB Nat'l Bank of Fla., N.A.*,
    622 So. 2d 1063 (Fla. 3d DCA 1993) ...................................................................................17

*Williams v. Miami-Dade Cnty.*,
    No. 23-CV-24530, 2024 WL 3395818 (S.D. Fla. July 13, 2024)............................................15

**<u>Rules / Statutes</u>**

Federal Rule of Civil Procedure 9(b)........................................................................... *passim*

## INTRODUCTION

Plaintiffs' Opposition illustrates why courts are rightfully skeptical of civil RICO class actions. This lawsuit will not right any wrongs, nor vindicate any consumer interests. It has, however, already tarnished Defendants' reputations and harmed their businesses. Plaintiffs have alleged an elaborate scheme to defraud consumers. Yet, as Defendants have explained, Plaintiffs do not allege that any Defendant misled any Plaintiff or that any alleged misconduct was the product of coordination among the Defendants. Instead of grappling with these issues, Plaintiffs' Opposition primarily restates their Amended Complaint's ("FAC") flawed allegations.

Moreover, the Opposition confirms that no Plaintiff has pled harm flowing from the alleged scheme. Plaintiffs concede that at least one Plaintiff—Conswallo Turner—cannot link her alleged damages to an alleged misrepresentation made by any Defendant. Opposition, ECF 134 ("Opp.") 34. The remaining Plaintiffs at least implicitly admit the same. *Id.* Each relies on various so-called "twisting" allegations to state their claim, but they cannot tie any of those allegations to a misrepresentation or omission, the basic requirement of any fraud claim.

The Opposition is also rife with inaccuracies and omissions. Plaintiffs do not respond to Defendants' prudential standing argument with respect to Plaintiffs Langley and Foreman, and therefore concede it. Plaintiffs likewise refuse to acknowledge, or analyze, the basic strictures of RICO—for example, that injuries must be concrete, and schemes to defraud require a misrepresentation, made with intent to defraud, with the object of obtaining money or property. Plaintiffs thus offer a version of RICO at odds with the governing Eleventh Circuit precedent.

Plaintiffs also attempt to amend the FAC via their Opposition. For example, Plaintiffs suggest various new facts and theories, and now—for the first time—argue that two of their claims are pled in the alternative. Opp. 7. Unfortunately, "a party may not supplant allegations made in

their pleading with new allegations raised in a response to a motion to dismiss."[2] *Mitsubishi HC Cap. Am. v. Aerospace Asset Trading, LLC*, No. 22-cv-20074, 2024 WL 4120819, at *5 n.4 (S.D. Fla. Aug. 27, 2024) (Damian, J.) (collecting cases). Finally, Plaintiffs' Opposition demonstrates that the FAC is impermissibly shotgun, as the Opposition plainly attempts to do the work (however unavailing) to distinguish each Defendant's conduct across each claim.

## ARGUMENT

## I.    PLAINTIFFS FAIL TO STATE A RICO CLAIM

Plaintiffs all but ignore governing Eleventh Circuit precedent requiring close scrutiny of civil RICO claims, particularly those based on asserted fraud. Although RICO is a "broad statute," Opp. 9, civil RICO claims are appropriately viewed with skepticism because the statute is regarded among "the most misused statutes in the federal corpus of law." *W. 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, No. 03-cv-8606, 2004 WL 2187069, at *5 (S.D.N.Y. Sept. 29, 2004). Within this circuit, the caselaw is replete with warnings that fraud-based RICO cases must be dismissed unless they meet a stringent standard. Defendants' Joint Motion to Dismiss, ECF 100 ("Br.") 11-12 (citing cases). The FAC is a prime example of why courts take this approach: Plaintiffs rely almost exclusively on their allegations of an overarching scheme without articulating any specific representations made to them, why those representations were false, or how those misrepresentations caused them concrete harm. Simply "assum[ing] these communications are fraud-based" without "additional details explaining how these …

---

[2]   Plaintiffs have not moved for leave to amend their FAC or otherwise described the substance of their proposed amendment; thus, the requests to amend embedded in their Opposition are improper and should be denied. *See Rosenberg v. Gould*, 554 F.3d 962, 967 (11th Cir. 2009) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." (quotation omitted)).

communications constitute fraud" does not satisfy Rule 9(b). Br. 39 (quoting *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1159-60 (S.D. Fla. 2019)).

A.    <u>Plaintiffs Do Not Have Statutory Standing</u>

Plaintiffs' allegations do not establish statutory standing under RICO because Plaintiffs fail to plead that they suffered a concrete injury "by reason of" the predicate acts. 18 U.S.C. § 1964(c); *see also* Br. 12. In arguing otherwise, Plaintiffs cite a host of inapposite cases to support their framing. Most notably, *Muransky v. Godiva* analyzed Article III standing under the Fair and Accurate Credit Transactions Act, and does not relate to RICO or its separate statutory standing burden at all. Opp. 15 (quoting 979 F.3d 917, 924 (11th Cir. 2020)). Establishing statutory standing, by definition, requires a plaintiff to do more than simply demonstrate Article III standing, and no RICO claim may proceed unless the plaintiff establishes both.[3] Plaintiffs fail to do either.

1.    *No Plaintiff has alleged a concrete injury*

Plaintiffs also ignore the requirement that a RICO plaintiff's injury must be "concrete." *E.g.*, Br. 13 (citing, among others, *Simpson v. Sanderson Farms*, 744 F.3d 702, 709 (11th Cir. 2014)).

*The Consumer Plaintiffs*. The Opposition observes that money is property, which is not in dispute. Plaintiffs, however, must plead *concrete* monetary losses—*i.e.*, a readily determinable amount. Br. 14-15. They fall far short of that standard. Four Consumer Plaintiffs plead intangible injuries that cannot be squared with this requirement (and Plaintiffs do not appear to argue otherwise, thereby conceding those claims). *Id.* Although the remaining Plaintiffs attempt to

---

[3]    *See, e.g.*, *Grow Michigan, LLC v. LT Lender, LLC*, 50 F.4th 587, 592-93, 595-96 (6th Cir. 2022) (finding plaintiffs satisfied Article III standing but failed to show statutory standing under § 1964(c)); *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 122 n.8 (2d Cir. 2003) (describing "the lesser burden for constitutional standing" compared to the statutory standing requirements of § 1964(c)).

identify limited tangible injuries, those do not establish standing because, save for Mrs. Foreman's tax damages, no injury is alleged with the concreteness necessary to demonstrate RICO statutory standing. *Id.* To avoid that conclusion, Plaintiffs attempt to argue that their health insurance policies were their property, but that is incorrect as a matter of law. *See infra* Section I.C.3.

*The Agent Plaintiffs*. Plaintiffs fail to identify even one commission that either Agent Plaintiff lost. The Agent Plaintiffs also fail to allege the value of the supposedly lost commissions, relying instead on the generalized allegation that a commission represents "***approximately*** $30" per month, extrapolating from that how much a family of four would generate in commissions annually. Opp. 18 (emphasis added). These generalities cannot substitute for identifying a specific, concrete commission lost due to Defendants' purportedly wrongful acts, *see* Br. 16, and that flaw is fatal. Plaintiffs likewise ignore the FAC's allegations that demonstrate that they actually retained clients that they claim were poached, further undermining the Agents' claims of injury via lost commissions. *Id.* Finally, Plaintiffs argue that they have properly identified "categories of damages," Opp. 19 n.9, but that merely underscores Plaintiff's inability to plead concrete injuries. Br. 15-17. Simply put, Plaintiffs' "bald assertion[s]" of loss do not represent the concrete injuries that the Eleventh Circuit has ruled required to satisfy RICO standing. *Simpson*, 744 F.3d at 712.

> 2. *No Plaintiff has alleged an injury that occurred "by reason of" the predicate acts*

Plaintiffs fail to demonstrate that their injuries occurred "by reason of" the predicate acts, or acknowledge that this standard requires a direct link between the alleged misconduct and the injury. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) (noting that "by reason of" includes a "directness requirement"). The Supreme Court has further explained that the "theory of causation" should "general[ly]" not "go beyond the first" link in the causal chain. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 10 (2010); *see also In re Chiquita Brands Int'l, Inc.*, 284 F. Supp.

4

3d 1284, 1314 n.29 (S.D. Fla. 2018) ("by reason of" under RICO is a more "stringent proximate causation standard"). The Eleventh Circuit considers three "factors" in evaluating directness. Br. 21. Under that framework, Plaintiffs' allegations fail to establish a direct harm.

*The Consumer Plaintiffs.* To establish causation for purposes of statutory standing, the Consumer Plaintiffs must allege that their injuries were caused by the predicate acts—*i.e.*, that the alleged misrepresentations and omissions associated with the mail and wire fraud predicate acts directly caused their harm. Plaintiffs, however, rely entirely on the switching and twisting allegations to demonstrate causation. Opp. 17. As explained below at Section I.C, this fails to establish wire fraud (and is not properly alleged in the FAC). Even if it were otherwise, Plaintiffs' failure to articulate any misrepresentations or actionable omissions connected to their injuries is a concession that the alleged fraud did not directly cause their injuries. The Opposition also misstates Plaintiffs' allegations regarding Minerva's involvement, which plainly set out that Minerva was not the only lead generator involved here. Br. 19 (citing FAC ¶¶ 194-95, 220 (alleging that "Minerva *essentially* became Enhance Health's exclusive lead provider," but stopping short of claiming actual exclusivity)) (emphasis added); Br. 19 n.4. Plaintiffs' arguments to the contrary appear aimed at amending their complaint via opposition, which is improper.

*The Agent Plaintiffs.* The Agent Plaintiffs' failure to identify any specific commissions alleged to have been lost as a direct result of Defendants' conduct reveals that their causation theory is speculative at best, and derivative at worst. Moreover, the Agent Plaintiffs do not allege that they were a target of the scheme, or that the scheme was "aimed primarily" at them, and their attempt to read that allegation into the FAC should be rejected. Opp. 13-14; *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1307 (11th Cir. 2003). Plaintiffs also argue, in passing, that the harm is felt "as soon as Defendants make the switch," Opp. 15, but the FAC

directly contradicts that statement through its allegation that commissions are paid "monthly." FAC ¶ 396 (noting the "monthly sales commission"). Finally, Plaintiffs ignore the numerous issues that Defendants identified with respect to parsing the harm caused by any individual Defendant, specifically, (1) the heavily competitive marketplace, (2) the Agents' acknowledgement that other unnamed actors were also responsible for their injuries, and (3) that the mere loss of customers, standing alone, is not necessarily a result of wrongful or fraudulent conduct. Br. 22-23; *see also Anza*, 547 U.S. at 460. This tenuous claim should be dismissed.

      B.    <u>Plaintiffs Do Not Plead An Enterprise</u>

Plaintiffs have not pled an enterprise because they have not plausibly pled a common purpose or that Defendants functioned as a "continuing unit."[4] *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017). Instead, they urge the Court to infer an enterprise because Defendants "interact[ed]" with one another and "everyone knew what was going on." Opp. 22 (emphasis removed). But "[e]stablishing a shared purpose requires more than alleging that all members of an enterprise acted in parallel and independently harbored a common improper motive." *Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1216 (S.D. Fla. 2021). Instead, there must be evidence of some activity that goes beyond general, self-interested business activity.[5] *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1308-09 (11th Cir. 2022).

---

[4] Plaintiffs misunderstand Defendants' argument. Plaintiffs assert that Defendants challenge only the second prong of the enterprise test—relationships among those associated with the enterprise. Opp. 20. Plaintiffs ignore that Defendants also argue that Plaintiffs failed to adequately allege a common purpose. Br. 27-30.

[5] Contrary to Plaintiffs' suggestion, this is equally true where "the individuals making up the enterprise acted fraudulently in pursuing their own business interests." *Cisneros v. Petland, Inc.*, 341 F. Supp. 3d 1365, 1373-74 (N.D. Ga. 2018)); *see also United Food & Commercial Workers Unions & Employers Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013) (noting the lack of support for the proposition "that these communications or actions were undertaken on behalf of the enterprise as opposed to on behalf of Walgreens and Par in their individual capacities, to advance their individual self-interests").

*Lewis* is particularly instructive. There, the court dismissed the plaintiffs' civil RICO claims for failure to allege a RICO enterprise, and specifically a common purpose, because the plaintiffs alleged only parallel conduct. 530 F. Supp. 3d at 1218. Plaintiffs filed a putative RICO class action against a car manufacturer, a headrest manufacturer, and the car manufacturer's distributor, based on allegations that cars were sold with defective headrests. *Id.* at 1199-1200. Plaintiffs alleged defendants knew of, and conspired to conceal, the defect, while publicly touting the vehicles' safety, *id.* at 1199, and alleged that defendants were united by a shared motive to increase profit margins. *Id.* at 1213. The court dismissed the RICO counts because plaintiffs pleading an association-in-fact enterprise "must allege, with enough factual detail, that members of the enterprise were ***actively collaborating*** to achieve th[e alleged] improper motive"—that is, the "specific interactions" between the enterprise members. *Id.* at 1216 (emphasis added) (quoting *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1213 (11th Cir. 2020)).

Here, as in *Lewis*, after stripping away conclusory allegations, Plaintiffs fail to allege specific communications between Defendants that establish active collaboration. Indeed, Plaintiffs do not allege Defendants agreed with one another to artificially grow the low-income ACA insurance industry by deceptive means, or even that the Defendants were in regular contact with one another throughout the life of the alleged enterprise. *Cf. Lewis*, 530 F. Supp. 3d at 1217 (finding no active collaboration due, in part, to lack of allegations showing "specific communications" demonstrating "collaborative scheme to defraud") (cleaned up); *see also In re Takata Airbag Prods. Liab. Litig.*, No. 14-24009, 2015 WL 9987659, at *1 (S.D. Fla. Dec. 2, 2015) (plaintiffs adequately stated RICO claim with "***pages of references to specific communications among defendants***" and knowledge of a defect, concealment, and defrauding customers) (emphasis added). Instead, Plaintiffs rely on generalized allegations that some Defendants trained

7

others on "how to handle" leads, FAC ¶ 191, or "enroll consumers in ACA plans," *id.* ¶ 215. That is insufficient. *Lewis*, 530 F. Supp. 3d at 1216. Plaintiffs also fail to "mention who at each company was in contact, what they were in contact about, or when, where, and how these communications occurred and constituted a part of the [alleged] scheme," as required for a RICO claim. *Leon v. Continental AG*, 301 F. Supp. 3d 1203, 1235 (S.D. Fla. 2017) (collecting cases).

Plaintiffs' remaining allegations regarding scripts, FAC ¶ 264 (alleging Enhance Health and TrueCoverage used the "same-type of scripts"), and AOR swapping, dual apping, and twisting, *id.* ¶¶ 27-28 (alleging both Enhance Health and TrueCoverage engaged in these activities), similarly fail to plausibly establish either a common purpose or that the Defendants acted as a "continuing unit." Rather, those allegations demonstrate self-interested, parallel business conduct, Br. 27-31, and "that the parties 'are associated in a manner directly related to their own primary business activities[,]'" which is insufficient to state a RICO claim. *Lewis*, 530 F. Supp. 3d at 1217 (citation omitted) (collecting cases).

C.   Plaintiffs Do Not Plead A Pattern of Racketeering Activity

Plaintiffs must plead the commission of at least two predicate acts by each Defendant that are related and continuous. Because Plaintiffs claim predicate acts of mail and wire fraud, as to each predicate act alleged against each Defendant, Plaintiffs must plead: (i) the existence of a scheme to defraud; (ii) the object of that scheme was to get money or property; (iii) the defendant knowingly or intentionally participated in that scheme with specific intent to defraud; and (iv) the mails or wires were used in furtherance of that scheme. *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1193 (S.D. Fla. 2021) (citation omitted). These allegations must meet the standard of Rule 9(b), which requires Plaintiffs to allege, with respect to the purported scheme to defraud: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the

8

Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010). Plaintiffs do none of those things.

1. *Plaintiffs do not allege that each Defendant engaged in a pattern of racketeering activity*

As a threshold matter, Plaintiffs' assertion that they need not plead that each Defendant committed two predicate acts to sustain their substantive RICO claim under § 1962(c) is simply incorrect. To plead a substantive RICO claim, a "plaintiff must plead that ***each defendant*** engaged in the conduct of the affairs of the RICO enterprise ***through a pattern of racketeering activity involving at least two predicate criminal acts*.**" *Cisneros*, 972 F.3d at 1204 (emphasis added); *see also, e.g.*, *Avirgan v. Hull*, 116 F.R.D. 591, 593 (S.D. Fla. 1987) (similar).[6] Plaintiffs, however, fail to plead the commission of any predicate acts at all by Herman, Panicker, Goldfuss, or Bowsky, *see* Br. 32, and their allegations against the other Defendants make it impossible to determine what predicate acts (if any) each is alleged to have committed. Because Plaintiffs have not alleged that each Defendant committed two predicate acts, they have, as a matter of law, failed to allege a pattern of racketeering activity by each Defendant. *See* Br. 40. Those failures alone merit dismissal.

2. *Plaintiffs do not allege any predicate acts with particularity*

Plaintiffs' attempt to explain away their failure to plead claims with the required particularity fares no better. *See* Br. 32 (setting forth Rule 9(b) standard and applicability to

---

[6] Plaintiffs' misleading quotation notwithstanding, *see* Opp. 30, the Eleventh Circuit's decision in *United States v. Church* does not hold otherwise. 955 F.2d 688, 694 (11th Cir. 1992). The language that Plaintiffs cite relates to RICO conspiracy, and, read in context, makes clear that the Eleventh Circuit did little more than reaffirm the requirement that, absent proof of an agreement to the overall conspiratorial objective, to be held liable for RICO conspiracy "*a defendant* [must] agree[] personally to commit two predicate acts." *Id.* (emphasis added); *see also id.* (affirming conviction because "the government presented sufficient evidence that Church agreed personally to commit two predicate acts of selling cocaine"). To accord that language any other interpretation would turn fundamental principles of conspiracy law on their head.

Plaintiffs' claims). Seeking to escape their insufficient allegations, Plaintiffs gesture toward the Eleventh Circuit's "alternative means" to satisfy Rule 9(b). Opp. 30-31. They assert that providing examples of purportedly deceptive advertisements (without alleging that any Defendant was the source of those advertisements or that any Plaintiff saw them) and excerpting "scripts" that Defendants purportedly used (without alleging that any such scripts were read to any Plaintiff or explaining why the scripts were false) is sufficient under Rule 9(b). That is inaccurate.

*Burgess v. Religious Technology Center* is particularly instructive. 600 F. App'x 657 (11th Cir. 2015). There, the Eleventh Circuit explained that the narrow "alternative means" exception to Rule 9(b) permits a plaintiff alleging a "prolonged multi-act scheme[] . . . to plead the overall nature of the fraud and then to allege with particularity one or more illustrative instances of the fraud." *Id.* at 662-63 (citation omitted). However, as the court explained, "a plaintiff is still required to allege at least some particular examples of fraudulent conduct." *Id.* at 663. Consequently, in affirming the order dismissing the fraud and state-law RICO claims, the Eleventh Circuit ruled that the plaintiffs had not met that standard because they had "failed to identify any specific examples to illustrate the fraud" and "lump[ed] all the defendants together as the sources of the misrepresentations." *Id.* That was true even though the plaintiffs in *Burgess* had identified some specific misrepresentations (more than Plaintiffs have done here), because they "failed to specify which defendant made the alleged misrepresentation, when that defendant made it, and through what medium." *Id.* at 664.

Here, Plaintiffs fail to plead with the required specificity *any* misrepresentation by *any* Defendant. While the FAC provides several "examples of the types of advertisements" that are allegedly similar to those created by Defendant Minerva, FAC ¶¶ 183-84, Plaintiffs never allege that those examples were created by or connected to Minerva or any other Defendant, or that any

Plaintiff saw them. Significantly, most Plaintiffs do not, in any event, allege that they saw any cash card advertisements, and the few that do claim to have seen them do not allege with any specificity the content of those advertisements or any facts connecting them to the Defendants. *Id.* ¶¶ 331-403, 347, 371. Plaintiffs similarly argue that the "scripts" referenced in the FAC are sufficient to discharge their burden, Opp. 32, but no Plaintiff alleges that any Defendant ever read any part of the referenced scripts, or made any other misleading statements to them.[7] In fact, several Plaintiffs do not claim to have spoken to any Defendant *at all*. *See* Opp. 50.

Seeking to avoid dismissal, Plaintiffs assert for the first time that Defendants made myriad misrepresentations to CMS in connection with alleged "AOR Swapping," "Twisting," and "Dual Apping." *See* Opp. 33 & n.12. The FAC, however, is entirely devoid of any allegation of specific affirmative misrepresentations made to CMS (or to any other party) to support this new argument, *see, e.g.*, Opp. 33 (citing FAC ¶¶ 276-86)[8], and "a party may not supplant allegations made in their pleading with new allegations raised in a response to a motion to dismiss." *Mitsubishi*, 2024 WL 4120819, at *5 n.4. Even if amendment-by-opposition were permissible, the theory would still fail in light of Plaintiffs' failure to plead with Rule 9(b) specificity.[9]

---

[7]   Plaintiffs also do not explain what about the excerpted scripts was, in fact, misleading, and whether these purported misrepresentations were affirmative or by means of omission. Enhance Health's script, for example, specifies that certain insurers may offer rewards but that this was not true of all insurers and such rewards were not provided simply for enrolling in the plan. FAC ¶ 269. Those statements are true. *E.g.*, *id.* ¶ 204. Moreover, to the extent that Plaintiffs appear to rely on a theory of fraud by omission relating to the scripts, they have not pled facts sufficient to create a duty to disclose, as is necessary to sustain that claim. *See, e.g.*, *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312-13 (11th Cir. 2000).

[8]   Plaintiffs' new arguments also contradict their arguments to the Court just one month ago: "[i]f someone goes in and cancels your policy, you're injured, and if they don't talk to you about it, that proves our point, ***there is no misrepresentation***." Oct. 16 Hg. Tr. at 38:22-25 (emphasis added).

[9]   Notably, Plaintiffs have failed to plead any facts suggesting that any representations to CMS were made with the knowledge that they were false. *See, e.g.*, *Arencibia v. AGA Serv. Co.*, 533 F. Supp. 3d 1180, 1193 (S.D. Fla. 2021) (wire fraud requires intent to defraud). Although

3.      *Plaintiffs fail to allege any scheme to obtain money or property*

Plaintiffs also fail to plead an essential element of wire fraud: that the object of the purportedly fraudulent scheme was to gain money or property. Plaintiffs do not respond to Defendants' argument that their PII is not property as a matter of law, *see* Br. 36-38, and therefore concede it. Instead, Plaintiffs appear to argue that the object of the alleged scheme was to deprive them of their health insurance policies. Opp. 33. Setting aside that Plaintiffs did not plead that theory, insurance policies simply are not "money or property."

"[T]he federal fraud statutes criminalize only schemes to deprive people of traditional property interests." *Ciminelli v. United States*, 598 U.S. 306, 309 (2023) (citation omitted). Following that principle, the Supreme Court has routinely rejected "theories of property rights" that "stray from traditional concepts of property." *Cleveland v. United States*, 531 U.S. 12, 24 (2000); *see, e.g.*, *Kelly v. United States*, 590 U.S. 391, 402-03 (2020) (labor costs required to implement scheme to cause traffic on George Washington Bridge are not property). While certain intangible property interests do fall within that scope, the Supreme Court has required these interests to involve a "[v]aluable entitlement[]" to collect money. *Pasquantino v. United States*, 544 U.S. 349, 355-56 (2005); *see, e.g.*, *United States v. Sullivan*, 118 F.4th 170, 209 (2d Cir. 2024) (noting that "courts interpreting the mail and wire fraud statutes have repeatedly concluded that ***enforceable rights*** to payments are 'property'" and collecting cases) (emphasis added).

---

Plaintiffs allege generally that large-scale plan switches occurred without consulting the affected individuals, FAC ¶ 276, the CMS document that Plaintiffs provide a link to says that initial consent may be valid for subsequent actions, such as plan switching, and that an individual may provide "agency-wide consent (*i.e.*, consent to other agents, brokers, and web-brokers who are part of the agency to take the authorized action)[.]" *See* https://tinyurl.com/yc6bctj4, at 2. Although Plaintiffs allege that various actions were taken on their own behalf without their "valid consent," *e.g.*, FAC ¶¶ 333, 338, 342, 352, they do not explain what consent they provided or why that consent was not valid.

Health insurance policies are not property; they represent a conditional opportunity to receive a payment if specified future events occur, rather than a vested entitlement or property interest. *See, e.g.*, *Maio v. Aetna, Inc.*, 221 F.3d 472, 488-90 (3d Cir. 2000) (observing that, under RICO, unless plaintiffs' insurance denied benefits or delivered inadequate treatment, they could not maintain the "conclusory allegation that they [had] been injured in their 'property'").[10] An insurance policy becomes an entitlement to collect money only when a claim is filed, *see id.*, but Plaintiffs have not alleged the deprivation of any filed claims under their previous insurance policies. *Cf. United States v. Abdelaziz*, 68 F.4th 1, 36 n.20 (1st Cir. 2023) (rejecting proposition that "a contractual interest necessarily creates a property interest" under the wire fraud statute and noting that the Supreme Court "expressly rejected that argument as to honest services fraud").

Plaintiffs' footnote citation to *Berg v. First State Insurance Co.* does not help them. 915 F.2d 460 (9th Cir. 1990). *Berg* relies on cases predating recent Supreme Court decisions reversing lower courts' overly broad interpretations of "property" under the federal wire fraud statute. *See United States v. Sadler*, 750 F.3d 585, 591 (6th Cir. 2014) ("Before 1987, numerous courts had interpreted the fraud statute broadly to affirm convictions involving schemes to defraud victims of all kinds of intangible rights …. The Supreme Court stopped this expanding universe of intangible-right protections[.]") (cleaned up). Moreover, the court in *Berg* appears to have assumed, without analysis, that the plaintiffs had a property interest in their insurance policy. 915 F.2d at 464 n.4. To support this assumption, *Berg* cites two cases that are wholly inapplicable here. *See In re*

---

[10]   *In re Managed Care Litigation* is inapposite. There, the court permitted RICO claims to proceed on the theory that "Defendants withheld information . . . which would have some bearing on the Plaintiffs' personal, subjective decision as to how much they were willing to pay and whether they would select one insurance plan over other alternatives." 150 F. Supp. 2d 1330, 1344 (S.D. Fla. 2001). But the Supreme Court has since held information "'necessary to make discretionary economic decisions' is not a traditional property interest" within the meaning of the mail and wire fraud statutes. *Ciminelli*, 598 U.S. at 309.

*Mendenhall's Estate*, 6 Cal. Rptr. 45, 47 (Cal. Dist. Ct. App. 1960) (holding that a fully vested life insurance policy was estate property because it had pecuniary value, could be sold, assigned or bequeathed by the owner, and was payable on condition of death); *In re Minoco Grp. of Companies, Ltd.*, 799 F.2d 517, 519 (9th Cir. 1986) (interpreting "property of the estate" under bankruptcy law to include officer and director liability insurance). Notably, the *Berg* court ultimately affirmed grant of summary judgment as to plaintiffs' RICO claims, because, in part, the plaintiffs "suffered no financial loss." 915 F.2d at 464-65. The same is true here.

At bottom, Plaintiffs fail to plead wire fraud because the objects of the alleged scheme—health insurance policies—are "not an interest that had 'long been recognized as property' when the wire fraud statute was enacted." *Ciminelli*, 598 U.S. at 314 (citation omitted).

## II.     PLAINTIFFS FAIL TO STATE A RICO CONSPIRACY CLAIM

Plaintiffs' RICO Conspiracy claims fail for three independently sufficient reasons. First, because Plaintiffs have failed to plead a plausible substantive RICO claim, their RICO conspiracy claim based on the same allegations necessarily fails. *See, e.g.*, *Cisneros*, 972 F.3d at 1220 (affirming dismissal of RICO conspiracy claim where allegations were "identical to those … with respect to the substantive RICO count"). Simply put, "parties cannot be found guilty of conspiring to commit an act that is not itself against the law." *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250, 1269 (11th Cir. 2004) (citation omitted), which is all that Plaintiffs have alleged here.

Second, the only plausible inferences to be drawn from the FAC are parallel conduct and ordinary commercial relationships. *See* Br. 40-43. As one example, Plaintiffs assert that each party's use of BenefitAlign's EDE platform to access the marketplace is evidence of a conspiracy, but Plaintiffs simultaneously acknowledge that EDE platforms are essential to running any meaningful operation in the industry. Likewise, Plaintiffs do not explain how or why it is reasonable to infer the existence of a conspiracy between market competitors who are actively

14

poaching one another's clients.[11] Stripped down, Plaintiffs try to fashion a conspiracy from ordinary "parallel conduct, accompanied by nothing more than a bare assertion of conspiracy," which is not permitted. *Am. Dental*, 605 F.3d at 1294-95. The FAC fails to plausibly allege Defendants' "preceding agreement" that predates the independent parallel conduct. *See id.* at 1294.

Finally, Plaintiffs now suggest that their RICO conspiracy claim is pled in the alternative. Opp. 7. Alternative claims must be pled in some "formulation from which it can be reasonably inferred that [Plaintiffs] are pleading in the alternative." *Williams v. Miami-Dade Cnty.*, No. 23-CV-24530, 2024 WL 3395818, at *14 (S.D. Fla. July 13, 2024) (citations omitted). In *Williams*, the court rejected a proposed alternative pleading because plaintiffs incorporated their "general factual allegations into each of their claims" against the defendant. *Id.* The same result is warranted here, as the Opposition demonstrates that the same allegations underlying the substantive RICO claim also support the conspiracy claim, including for Defendant Net Health Affiliates.

## III.   PLAINTIFFS FAIL TO STATE AIDING AND ABETTING RICO CLAIMS

Plaintiffs make three arguments in support of their aiding and abetting RICO claims. Each fails. First, every circuit court that has addressed the issue has ruled that the aiding and abetting RICO claim is no longer viable in light of *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994). *See DeFalco v. Bernas*, 244 F.3d 286, 330 (2d Cir. 2001); *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 656 (3d Cir. 1998). Recent Southern District of Florida cases, Br. 43, demonstrate that this Court has accepted this construction. Second, Plaintiffs' attempt to reformulate this claim as an alternative to substantive RICO should be

---

[11]     Plaintiffs make the conclusory argument that "[t]he upline/downline nature of the agencies in the enterprise ensured that switching among them, if any, was net neutral." Opp. 26. But Plaintiffs allege that such conduct continued long after Enhance ceased being a downline of TrueCoverage and developed its own downline network.

rejected, for the same reasons as discussed *supra* at Section II. Finally, Plaintiffs' substantive allegations regarding aiding and abetting fail in any case. *See* Br. 14-15.

## IV.    PLAINTIFFS FAIL TO STATE AIDING AND ABETTING FRAUD CLAIMS

Plaintiffs' two arguments fail to show that Plaintiffs' aiding and abetting fraud claims are viable. First, for the reasons explained, Plaintiffs' fraud arguments cannot satisfy Rule 9(b). Br. 47; *supra* Section I.C.2. Second, Plaintiffs have not successfully pled that any Defendant had actual knowledge or rendered substantial assistance. Br. 47-48. Plaintiffs ignore their own allegations demonstrating that the complained-of conduct was the result of legitimate and independent business activities untethered to any RICO violation. *Id.*

## V.    PLAINTIFFS FAIL TO STATE AIDING AND ABETTING BREACH OF FIDUCIARY DUTY CLAIMS

Plaintiffs' aiding and abetting breach of fiduciary duty claims fail for three reasons. First, no Defendant owed a fiduciary duty to any Plaintiff. Although Florida courts have recognized that a fiduciary relationship "***can*** arise" between an insurance broker and an insured, "the insured must allege facts showing that it placed trust in the insurance broker and that the broker accepted the insured's trust." *School Bd. of Osceola County, Fla. v. Gallagher Benefit Servs., Inc.*, No. 21-cv-1979, 2022 WL 19914514, at *6 (M.D. Fla. June 22, 2022) (emphasis added) (citing *Johnson v. Catamaran Health Sols., LLC*, 687 F. App'x 825, 830 (11th Cir. 2017)). Implied fiduciary relationships "are premised upon the specific factual situation surrounding the transaction and the relationship of the parties." *Johnson*, 687 F. App'x at 830 (citation omitted). Here, Plaintiffs have failed to allege with particularity the facts which purportedly created the duty that existed here. *See Feng v. Walsh*, No. 19-cv-24138, 2021 WL 8055449, at *9-10 (S.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 669198 (S.D. Fla. Mar. 7, 2022). Specifically, Plaintiffs do not allege ***how*** or even ***whether*** they relied or depended on Defendants in any manner that

would demonstrate a fiduciary relationship. *See Johnson*, 687 F. App'x at 830-31 ("[I]n order to plead an implied fiduciary relationship, a plaintiff 'must allege some degree of dependency on the defendant and some degree of undertaking by the defendant to advise, counsel, and protect the plaintiff.'" (alterations adopted) (quoting *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So. 2d 1063, 1065 (Fla. 3d DCA 1993))).

Plaintiffs rely on scripts to support the existence of a fiduciary duty owed to Plaintiffs, FAC ¶ 309; Opp. 50, but fail to allege that any named Plaintiff ***actually interacted*** with any Defendant, much less that they received ***and relied upon*** any representations by any Defendant, including those in the scripts. Plaintiffs cite cases holding a fiduciary relationship existed but ignore that each involved specific facts showing that the insured "reposed trust and confidence" in the defendant.[12] *See* Br. 50-51.

The only allegation Plaintiffs identify to satisfy this standard is that Plaintiff Turner called a number on an advertisement offering cash cards, provided her information, and that, following that conversation, several agents, one of whom was affiliated with Enhance Health, changed her health insurance without her consent. Opp. 50-51; FAC ¶ 371. This omits any supporting facts regarding her alleged conversation with the agent, as necessary to establish her claims of trust. In fact, Plaintiff Turner admits that she does not even remember with whom she spoke during the call. Opp. 34. Absent any "degree of dependency," Plaintiffs fail to establish a fiduciary relationship.[13]

---

[12]   Plaintiffs appear to argue that a fiduciary relationship exists as a matter of law, while simultaneously contradicting this point by acknowledging that the existence of a "special relationship" must be determined by the jury. *See* Opp. 52.

[13]   Plaintiffs' reliance on the CMS regulations is similarly misplaced. The regulations cannot form the basis of a fiduciary duty where there is no private right of action. Br. 53. Nor do they offer "additional evidence," Opp. 51 n.20, of a fiduciary duty where none exists based on the facts alleged.

Second, for the same reasons, Plaintiffs fail to allege any "special relationship" triggering an enhanced duty. As Plaintiffs acknowledge, that is a fact-specific inquiry and requires a showing of reliance by the insured. Opp. 49-50. The FAC lacks any allegations of reliance, and consequently, Plaintiffs fail to establish that a duty existed, and no Defendant could aid and abet another in breaching a duty that did not exist.[14]

Third, even if a fiduciary duty existed, Plaintiffs fail to allege actual knowledge of the breach, substantial assistance, or encouragement to satisfy the aiding and abetting standard. Plaintiffs' allegations fail to establish that Minerva and Bowsky, as lead generators, had actual knowledge of any primary wrongdoer's conduct after selling the leads. Br. 53. The generation and sale of allegedly fraudulent leads occurred before any hypothetical interaction that could give rise to a fiduciary duty. In addition, the allegations indicate that, far from providing substantial assistance to one another, TrueCoverage and Enhance were active competitors. FAC ¶¶ 259-73, 280. The mere fact that "everyone [allegedly] knew what was going on," Opp. 22, is insufficient to establish aiding and abetting liability given Plaintiffs' failure to allege an independent fiduciary duty. *See Codeventures, LLC v. Vital Motion Inc.*, No. 20-cv-21574, 2021 WL 1131531, at *5 (S.D. Fla. Mar. 24, 2021) ("Substantial assistance occurs when a defendant affirmatively assists, helps conceal, or fails to act when required to do so, thereby enabling the breach to occur.") (citation omitted).

---

[14]    In a footnote, Plaintiffs erroneously assert that Defendants other than Minerva and Bowsky have failed to contest the element of the existence of a duty. As explained, "Plaintiffs cannot establish the existence of a fiduciary duty owed by the primary wrongdoers—a necessary element of aiding and abetting breach of fiduciary duty—and thus that claim fails" against all Defendants. Br. 53.

## VI.    <u>PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE</u>

Plaintiffs' negligence claim also fails. Plaintiffs fail to address the fact that federal regulations and executive memoranda do not impose a duty of care on Defendants, as is required to state either a negligence or negligence *per se* claim, in part because the regulations do not create a private cause of action.[15] Br. 55-58. Plaintiffs also concede that the OMB guidance does not impose a statutory duty of care on Defendants, but suggest that it "shows" Defendants' breach of some undefined duty. Opp. 54. However, Plaintiffs have failed to establish that a duty existed in the first place. The federal regulations governing non-Exchange entities do not establish a legal duty running from Defendants to Plaintiffs because they do not contemplate "enforcement for an individual harm." *Johnson v. Badger Acquisition of Tampa LLC*, 983 So. 2d 1175, 1182 (Fla. 2d DCA 2008). Although "the violation of a statute may be evidence of negligence, … such evidence only becomes relevant to a breach of a standard of care ***after*** the law has imposed a duty of care." *Id.* (emphasis added). Here, Plaintiffs have "not demonstrated that the statute or administrative rules impose a legal duty." *See id*. (concluding that "the absence of a private cause of action indicate[d] that the legislature did not contemplate the enforcement for an individual harm").

Plaintiffs now argue that Defendants' alleged actions foreseeably caused a risk of harm to Plaintiffs. However, the FAC makes only a single conclusory allegation. Br. 59 (citing FAC ¶ 881).

---

[15] Plaintiffs maintain that they did not intend to plead a negligence *per se* claim. Opp. 54. But Plaintiffs alleged that the purpose of the web-broker agreements and federal regulations is to protect Consumer Class Plaintiffs and class members, who "fall within the class of persons that [those authorities] were intended to protect" from the specific type of harm alleged. *See* FAC ¶¶ 861, 878, 880. Those allegations are quintessential elements of negligence *per se*. *See Chevron U.S.A., Inc. v. Forbes*, 783 So. 2d 1215, 1219 (Fla. 4th DCA 2001) (defining negligence *per se* as the "violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular type of injury") (citation omitted). In contrast, where a statute or regulation's "purpose is to protect the general public, as opposed to a particular class of persons," violation of the statute constitutes evidence of ordinary negligence. *Id.* Regardless of whether Plaintiffs' claim is construed as negligence or negligence *per se*, it fails for the reasons above.

19

That theory is therefore not properly pled and, again, Plaintiffs may not amend via their opposition brief. Plaintiffs rely on contracts between Defendants and the federal government, *see* FAC ¶ 864; Opp. 52, but those contracts do not create a duty running from Defendants to Plaintiffs, who are at most incidental beneficiaries with no enforceable rights, *see* Br. 58. The FAC fails to set forth other allegations supporting a duty arising from the "general facts of the case" rather than from statute or regulation. *Dorsey v. Reider*, 139 So. 3d 860, 863 (Fla. 2014). Nor do Plaintiffs allege facts showing that they were in a foreseeable zone of risk. To the contrary, FAC skirts that concept and focuses entirely on the purported statutory and contractual duties owed by Defendants.

Plaintiffs' theory that Defendants owe a duty arising from "judicial interpretations" was not pled and has no application here. Opp. 53. The FAC contains multiple paragraphs describing the federal regulations and the web-broker agreement as the basis for the purported duty. Plaintiffs merely allege that Defendants entered into web-broker agreements required by federal law, not that they affirmatively undertook to provide a service to Plaintiffs.. Moreover, the "undertaker's doctrine" is "inapplicable where there is no physical harm," *Badger Acquisition*, 983 So. 2d at 1186, and Plaintiffs do not identify any other common-law duty of care that Defendants owed them. Thus, Plaintiffs failed to establish a duty owed by Defendants, and their negligence claim fails.

Finally, Plaintiffs' revisionist Opposition underscores the shotgun nature of their negligence claim. For instance, the FAC recites OMB guidance documents and federal regulations, alleging that Defendants' conduct violated the regulations and the terms of the web-broker agreements entered into with CMS, and that these violations harmed Plaintiffs, which is an entirely separate theory of duty completely divorced from these regulations.

## **CONCLUSION**

For these reasons, Defendants respectfully request that the FAC be dismissed.

Dated: November 20, 2024

Respectfully submitted,

/s/   *Olga M. Vieira*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP

Samuel G. Williamson (FBN: 1033817)
Olga M. Vieira (FBN: 29783)
Laura N. Ferguson (FBN: 1047701)
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
Tel.: (305) 496-2988
samwilliamson@quinnemanuel.com
olgavieira@quinnemanuel.com
lauraferguson@quinnemanuel.com

*Attorneys for Enhance Health LLC, and*
*Matthew B. Heman*

/s/   *Ryan H. Lehrer*
TRIPP SCOTT, P.A.
110 S.E. 6th Street, 15th Floor
Fort Lauderdale, Florida 33301
Tel.: (954) 525-7500

RYAN H. LEHRER, ESQ. (FBN: 0084423)
(rhl@trippscott.com; sxc@trippscott.com;
cab@trippscott.com;
eservice@trippscott.com)
SETH J. DONAHOE, ESQ. (FBN: 1004133)
(sjd@trippscott.com; sgc@trippscott.com)
JENNIFER H. WAHBA, ESQ. (FBN:
1010093)
(jmh@trippscott.com; jam@trippscott.com)

*Attorneys for Defendants Number One*
*Prospecting, LLC d/b/a Minerva Marketing,*
*and Brandon Bowsky*

/s/   *Amy R. Richardson*
DEVINE GOODMAN & RASCO, LLP
2800 Ponce de Leon Blvd., Suite 1400
Coral Gables, Florida 33134
Tel.: 305-374-8200
grasco@devinegoodman.com

Guy A. Rasco, Esq. (F.B.N.: 727520)
And of Counsel (*pro hac vice forthcoming*)
Amy E. Richardson, Esq.
HWG, LLP
333 Fayetteville Street, Suite 1500
Raleigh, NC 27601

Patrick P. O'Donnell, Esq.
Walter E. Anderson, Esq.
HWG, LLP
1919 M. Street N.W., Suite 800
Washington, D.C. 20036

*Attorneys for TrueCoverage, LLC;*
*Benefitalign, LLC; Speridian Technologies,*
*LLC; Girish Panicker; and Matthew Goldfuss*

/s/   *Timothy A. Kolaya*
STUMPHAUZER KOLAYA
NADLER & SLOMAN, PLLC
2 South Biscayne Blvd., Suite 1600
Miami, Florida 33131
Tel.: (305) 614-1400

Timothy A. Kolaya, Esq. (FBN 056140)
tkolaya@sknlaw.com

*Attorneys for Net Health Affiliates, Inc.*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was electronically filed by

CM/ECF on November 20, 2024.

/s/   *Olga M. Vieira*
Olga M. Vieira  (FBN: 29783)